[L.A. No. 31395. June 1, 1982.]

CLIFFORD STONE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Milton J. Silverman for Petitioner.

Quin Denvir, State Public Defender, Lisa Short, Deputy State Public Defender, Carl Yaeckel and Frank X. Nageotte as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Richard D. Huffman, Chief Deputy District Attorney, Paul M. Morley, Hugh E. McManus and Terry J. Scott, Deputy District Attorneys, for Real Party in Interest.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen, Steven V. Adler and Pat Zaharopoulos, Deputy Attorneys General, John K. Van de Kamp, District Attorney (Los Angeles), Harry B. Sondheim and Richard W. Gerry, Deputy District Attorneys, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**MOSK, J.**—That no criminal defendant should be twice forced to bear the risk of conviction for a single offense is a basic precept of our system of criminal justice. From this deceptively simple premise is derived much of the complex, rapidly expanding body of law implementing the constitutional prohibition against double jeopardy.

The murder case at bar presents four issues: (1) whether we should give effect to the informally expressed, albeit unequivocal, intent of the jury to unanimously acquit this defendant of the charge of murder; (2) whether the double jeopardy prohibition against multiple prosecutions for a single offense requires that trial courts provide a means for the receipt of a partial verdict when a jury unanimously favors acquittal on a charged offense yet remains deadlocked as to an uncharged lesser included offense contained by implication in the same count; (3) whether a partial verdict of acquittal on a greater offense prevents a subsequent prosecution for the uncharged lesser included offense as to which the jury was unable to agree; and (4) whether the trial court's declaration of a mistrial and subsequent discharge of the jury herein was premature with respect to the manslaughter offenses.

Beginning in June 1980, defendant Clifford Stone stood trial on a charge of murder. (Pen. Code, § 187.) The jury was instructed on first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. The verdict forms presented the jury with six options: declare the defendant guilty of the charged offense or any of the three uncharged lesser included offenses; find that he committed a justifiable homicide; or simply acquit him. Parenthetically, we can perceive no reason for distinguishing, in this context, justifiable homicide and acquittal.

The jury deliberated for seven days, but was unable to reach a unanimous verdict within the options presented to it. The prosecution and defense counsel then stipulated to an inquiry to determine the jury's position. The foreman reported in open court that the members of the jury stood as follows:

| | |
|---|---|
| First degree murder | No votes |
| Second degree murder | No votes |
| Voluntary manslaughter | Four votes |
| Involuntary manslaughter | Two votes |
| Justifiable homicide | Six votes |
| Acquittal | No votes |

In response to questioning from the court, each juror expressed the opinion that the jury was hopelessly deadlocked and further deliberations would not yield a verdict. The court dismissed them for the day.

The next morning, before the jury had reentered the courtroom, defense counsel filed a motion asking the court to adopt one of a number of alternative courses of action designed to give effect to the jury's obvious intent: (1) to formally receive a verdict on the offenses of first and second degree murder; (2) to require the prosecution to amend the accusatory pleading to charge manslaughter in a separate count; (3) to submit to the jury a request for a special verdict on the existence of malice; or (4) to withdraw from the jury's consideration all lesser included offenses if the prosecution was unwilling to amend the information. The court responded by recognizing that "After seven days of deliberation, the foreman has indicated there is no one for first degree murder, no one for second degree murder . . . ." However, the court felt compelled to deny defendant's motion because of the lack of any established procedure for the receipt of a partial verdict in these circumstances: "My opinion, I don't have any authority to take any of the action that you request other than to protect your record by what we have in. And I think . . . that if any action is going to be taken, it has to come from a court higher than a Superior Court, which is required to follow the criminal law and procedure." Moments later, this colloquy ensued:

"THE COURT: . . . I think your remedy, if there is one at all, lies with the California Supreme Court. . . .

"MR. SILVERMAN [defense counsel]: . . . if it gets to the California Supreme Court, I think that the court here, the trial court should have a clear expression from this jury as to its finding with respect to first and second degree murder.

"THE COURT: I am *ruling* that there is a clear expression that after approximately ten weeks of trial and one week of deliberations there is not one juror of the 12 who believes that the evidence is sufficient to support a finding of first degree murder beyond a reasonable doubt. I don't think I can give you any more." (Italics added.)

When the jury was brought into the courtroom and again polled to see if each juror believed that further deliberations could possibly result in a verdict, one juror expressed hope that a verdict might be reached. The court ordered further deliberations. However, a day and a half later, the foreman again indicated that the jury was unable to render a unanimous verdict, and each juror agreed. Before discharging the jury

and declaring a mistrial, the court again asked the foreman how the jury stood on the individual offenses, with this result:

| | |
|---|---|
| First degree murder | No votes |
| Second degree murder | No votes |
| Voluntary manslaughter | Three votes |
| Involuntary manslaughter | Five votes |
| Justifiable homicide | Four votes |
| Acquittal | No votes |

After the court declared a mistrial and denied defendant's motion for dismissal of some or all of the charges, defendant sought extraordinary relief in the form of a writ of prohibition.[1] It is defendant's theory that the jury functionally acquitted him on the murder charge and therefore double jeopardy prevents his retrial for murder. He also seeks to avoid retrial for manslaughter, asserting statutory and constitutional grounds barring such retrial.

## I.

First addressing the question whether double jeopardy principles forbid a retrial of defendant on the charge of murder, we are mindful that the double jeopardy clause of the Fifth Amendment applies to the states through the general provisions of the Fourteenth Amendment.

---

[1] It is well settled that a writ of prohibition is an appropriate remedy to prevent retrial on a claim of former jeopardy. (*Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641]; *Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273, 275 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371]; *Gomez* v. *Superior Court* (1958) 50 Cal.2d 640, 653 [328 P.2d 976].)

This rule must be reconciled with the apparently inconsistent holdings of earlier cases which required a jury finding on factual issues raised by a plea of former jeopardy. (E.g., *People* v. *Greer* (1947) 30 Cal.2d 589, 595-596 [184 P.2d 512].) In addition, numerous statutory provisions refer to the "plea" of on once in jeopardy. (E.g., Pen. Code, §§ 1016, 1017, 1041, 1151.) Retention of the rule that a claim of former jeopardy is a jurisdictional defense cognizable on a pretrial writ will promote the efficient administration of justice by disposing of some cases prior to trial. Also, defendants will be protected from having to endure a second trial after being once placed in jeopardy.

*Greer* and like cases are compatible with continued review of double jeopardy issues by pretrial writ. Those cases merely stand for the proposition that when a defendant chooses to raise his claim as a defense at trial, he is entitled to a resolution by the jury of any material issues of fact raised by the claim. We note that a claim of double jeopardy is most appropriately raised by way of a pretrial motion to dismiss the accusatory pleading or portion thereof allegedly barred by double jeopardy. The determination of the validity of a claim of double jeopardy is a matter for the trial judge in the first instance. If there is no material issue of fact, the judge rules on the double jeopardy claim. If, however, a material issue of fact exists, then it is for the jury to resolve.

(*Benton* v. *Maryland* (1969) 395 U.S. 784, 794-796 [23 L.Ed.2d 707, 715-717, 89 S.Ct. 2056].) Thus, the minimum standards of double jeopardy protection for criminal defendants, as enunciated by numerous United States Supreme Court decisions, are binding on this court. Of course, we remain free to delineate a higher level of protection under article I, section 15 (formerly § 13), of the California Constitution. (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 716 [87 Cal.Rptr. 361, 470 P.2d 345]; see also *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [119 Cal.Rptr. 302, 531 P.2d 1086].)

■ Defendant contends that the jury effectively found him not guilty of the offenses of first and second degree murder and that we should give formal effect to the jury's intent by preventing his retrial for those offenses. The early cases interpreting the double jeopardy clause established the fundamental principle that no criminal defendant can be retried for an offense of which he has once been acquitted. (See *United States* v. *Ball* (1896) 163 U.S. 662, 671 [41 L.Ed. 300, 303, 16 S.Ct. 1192]; *People* v. *Webb* (1869) 38 Cal. 467, 479-480.) This basic protection was long ago codified in Penal Code sections 687 and 1023, enacted in 1872.[2] It is plain, then, that if we recognize the jury's actions to be the equivalent of an acquittal of murder, defendant cannot be retried for either degree of that offense.

The facts demonstrate overwhelmingly that the jury, having evaluated for one entire week all the evidence the prosecution was able to muster, unanimously concluded that the prosecution had not introduced sufficient evidence to convince them to convict the defendant of murder. The trial court made an unambiguous and amply supported finding of this fact. The question is whether we should accord the terminal effect of a verdict to such an unequivocally expressed conclusion of a jury.

Two lines of authority are cited for the proposition that we should recognize the jury's plain intent not to convict defendant of murder.[3]

[2]Hereinafter, all statutory references are to the Penal Code. Section 687 provides: "No person can be subjected to a second prosecution for a public offense for which he has once been prosecuted and convicted or acquitted.

Section 1023 provides: "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that accusatory pleading."

[3]The People cite *People* v. *Dixon* (1979) 24 Cal.3d 43 [154 Cal.Rptr. 236, 592 P.2d 752]. That case held only that a judge may not receive a verdict of guilty of murder

The first series of cases is summed up as follows in *People v. Bratis* (1977) 73 Cal.App.3d 751, 763 [141 Cal.Rptr. 45]: "'There are innumerable authorities which declare that the form of the verdict is immaterial if the intention to convict of the crime charged is unmistakably expressed. [Citations.]'" These authorities have developed despite the language of section 1162, which states: "If the jury persists in finding an informal verdict, from which, however, it can be clearly understood that their intention is to find in favor of the defendant upon the issue, it must be entered in the terms in which it is found, and the Court must give judgment of acquittal. But no judgment of conviction can be given unless the jury expressly finds against the defendant upon the issue . . . ." Related cases have stressed that in determining what verdict, if any, a jury intended to return, the "oral declaration of the jurors endorsing the result is the true return of the verdict. There is no requirement that the verdict be in written form. (§ 1149; *People v. Mestas*, 253 Cal.App.2d 780 . . . .)" (*People v. Lankford* (1976) 55 Cal.App.3d 203, 211 [127 Cal.Rptr. 408].)[4]

In a different factual setting, courts have found an "implied verdict" when the jury made no expression, formal or informal, of its conclusion regarding the particular charge involved. Such cases hold that a verdict of guilty of a lesser included offense constitutes an implied acquittal of the greater offense of which the jury could have convicted the defendant.[5] These authorities amply rebut the People's contention that a jury verdict in a criminal case cannot be given effect unless the formal statutory procedures are followed. (See §§ 1149, 1163, 1164.)

---

unless the jury is unanimous as to the degree as well as the crime of murder. It is not relevant to the question whether a judge may receive a partial verdict on an offense as to which the jury is unanimous.

[4]There is no conflict with Code of Civil Procedure section 618, which delineates the formal procedures required for the reception of jury verdicts in civil cases; it requires that such verdicts be in writing. However, that section does not apply to jury verdicts in criminal cases; the procedures applicable to criminal cases are contained in Penal Code sections 1149, 1162, 1163, and 1164. These sections do not require a verdict to be in writing, and the cases cited above have so held.

[5]This court recognized the notion of implied acquittal as early as 1854: "A conviction for manslaughter is an acquittal of the charge of murder, and the verdict, though general in its terms, must, by legal operation, amount to an acquittal of every higher offense charged in the indictment than the particular one of which the prisoner is found guilty." (*People v. Gilmore* (1854) 4 Cal. 376; see also *People v. Serrato* (1973) 9 Cal.3d 753, 760 [109 Cal.Rptr. 65, 512 P.2d 289]; *Gomez v. Superior Court, supra,* 50 Cal.2d 640, 643 [328 P.2d 976]; *In re Hess* (1955) 45 Cal.2d 171, 175-176 [288 P.2d 5]; *People v. Gordon* (1893) 99 Cal. 227, 229-232 [33 P. 901].) In connection with this well-established application of the theory of implied acquittal, we observe that prior to this case a criminal defendant who was actually convicted of an uncharged lesser in-

A more thoughtful analysis is required of our decision in *People* v. *Griffin* (1967) 66 Cal.2d 459 [58 Cal.Rptr. 107, 426 P.2d 507], and the Court of Appeal cases interpreting *Griffin*, which are said to prevent us from giving effect to the jury's intent here. In *Griffin*, the defendant was tried a second time on a charge of first degree murder, the first conviction of that charge having been overturned on appeal. When the jury at the second trial was unable to reach a unanimous verdict, the judge discharged it and declared a mistrial. The foreman then declared in open court that the jury had stood ten for acquittal and two for conviction of second degree murder. At a third trial, the defendant was convicted of first degree murder. On appeal from that conviction, he claimed that the jury at his second trial had impliedly acquitted him of first degree murder.

This court rejected the defendant's claim of former acquittal, reasoning as follows: "We may not infer from the foreman's statement that the jury had unanimously agreed to acquit of first degree murder. There is no reliable basis in fact for such an implication, for the jurors had not completed their deliberations and those voting for second degree murder may have been temporarily compromising in an effort to reach unanimity." (*Id.* at p. 464.)

While cases in other states are in disarray on the issue of giving effect to implied partial verdicts of acquittal on a charged offense when the jury is deadlocked as to an uncharged lesser included offense,[6] two California Court of Appeal decisions have applied the rule of *Griffin* to comparable factual situations: In *People* v. *Doolittle* (1972) 23 Cal.

---

cluded offense was given greater double jeopardy protection than the arguably less culpable defendant who, like Stone, was not convicted of anything. The convicted defendant clearly could not be retried on the greater charge; ironically, it is here contended that the defendant whose jury deadlocked only on the lesser offense could be retried even on the greater charged offense.

[6]In *People* v. *Hall* (1975) 25 Ill.App.3d 992 [324 N.E.2d 50, 52], an intermediate appellate court rejected defendant's "novel" claim of implied partial acquittal, citing *Griffin*: "[I]t is very possible that several of the jurors did believe that the defendant was guilty of murder, but they agreed to find the defendant guilty of the lesser offense of voluntary manslaughter in a spirit of compromise to reach a verdict." A recent New Mexico Supreme Court case declined to follow *Griffin*, stating: "If charges are presented to a jury as separate or alternative counts rather than included offenses, [New Mexico statutes allow] retrial only for counts upon which the jury cannot agree. . . . Retrial·is thus precluded for counts upon which the jury reached unanimous agreement and returned a verdict. [Citation.] The same result should also obtain if a jury has voted unanimously for acquittal on any of several included offenses." (*State* v. *Castrillo* (1977) 90 N.M. 608 [566 P.2d 1146, 1149].) In New York, partial verdicts are expressly allowed by statute. (See N.Y. Crim. Proc. Law, § 310.70.)

App.3d 14 [99 Cal.Rptr. 810], the defendant stood trial on a charge of murder. The jury was given the option of convicting him of the charged offense or one of the offenses necessarily included therein, or of acquitting him of all offenses. After the jurors reported themselves unable to reach a verdict within those options, the court declared a mistrial and discharged the jury, and set the case for retrial. Thereafter, in support of the defendant's pretrial motion to enter a plea of once in jeopardy or former acquittal, the jury foreman testified that on the jury's final vote, no juror had voted to convict of first degree murder. The *Doolittle* court nevertheless held that no verdict had been reached in the first trial, relying on *Griffin*: "The significant holding in *Griffin* is that the jury, as in the case here, had not completed its deliberations. In the instant case, as in *Griffin*, the ballots taken and voted upon may well have been the result of temporary compromises in an effort to reach unanimity." (*Id.* at p. 21.)

In *Magee v. Superior Court* (1973) 34 Cal.App.3d 201 [109 Cal.Rptr. 758], the jury in the defendant's first trial was given the options of acquitting him or of finding him guilty of either the charged offense of kidnaping for the purpose of extortion (§ 209) or of the uncharged lesser included offense of simple kidnaping (§ 207). The jury was unable to reach a verdict within those options, and a mistrial was declared. In the second trial, the defendant argued that the jury had functionally acquitted him of the greater offense. In support of this contention, he produced an affidavit of the jury foreman to the effect that the jury had unanimously agreed that he was not guilty of violating section 209, yet was deadlocked as to the lesser offense. An affidavit of another juror, however, stated that the jurors never voted or otherwise agreed that the defendant should be found not guilty of the greater offense. The court discussed *Griffin* and *Doolittle*, but rejected the defendant's claim of former jeopardy primarily on a theory that by twice moving for a mistrial he had consented to the discharge of the jury and thereby waived his jeopardy claim. (*Id.* at pp. 215-218; see also *People v. Hathcock* (1973) 8 Cal.3d 599, 613-614 [105 Cal.Rptr. 540, 504 P.2d 476]; *Curry v. Superior Court* (1970) *supra*, 2 Cal.3d 707, 712-713; *People v. Terry* (1970) 2 Cal.3d 362, 386 [85 Cal.Rptr. 409, 466 P.2d 961]; *Cardenas v. Superior Court* (1961) *supra*, 56 Cal.2d 273, 276; *People v. Snyder* (1976) 56 Cal.App.3d 195, 201-202 [128 Cal.Rptr. 297].)

*Griffin*, *Doolittle*, and *Magee* are all factually distinguishable from the case at bar. In each, the trial judge was given no indication of how

the jurors stood until *after* he had declared a mistrial and discharged the jury; in no case was the judge given the opportunity to receive a partial verdict. Moreover, in each case the defendant's claim of partial acquittal was based on the statement of a single juror, and in *Magee* there was a contrary affidavit of another juror.

The primary concern of the *Griffin* court was to insure that a verdict represents the definite and final expression of the jury's intent with respect to the disposition of the factual issues presented by a particular case. The members of the jury in *Griffin* never gave any indication of a final intent to acquit the defendant of the murder charge, and the facts in *Doolittle* and *Magee* were similarly equivocal. Here, by contrast, the foreman twice declared—*prior to discharge, in open court*, and *in the presence of the other jurors*—that the jury stood firmly and finally 12 to nothing in favor of acquittal of both degrees of murder. The court then made a factual finding and legal ruling to the same effect. In these circumstances there is no realistic basis for the sheer speculation that the jurors may have been merely "temporarily compromising in an effort to achieve unanimity." Thus, although clear and uncontradicted evidence revealed that the jury was prepared to render a partial verdict of acquittal of murder and the court was inclined to accept the verdict, it was only the lack of an established procedure for giving formal effect to the jury's conclusion that prevented the court from receiving such a verdict. Because of these compelling circumstances, we conclude the jury's obvious intent should be recognized here by holding that defendant was in fact acquitted of murder.

However, we do not rest our decision solely on the above-noted factual distinctions between this case and the prior authorities: there are other grounds for refusing to allow this defendant to be retried for murder. The present facts raise an issue that was not addressed in *Griffin*: whether the double jeopardy clause requires that trial courts, in future cases, receive a partial verdict when the jury clearly favors acquittal on a charged offense but is unable to agree on the proper disposition of an uncharged lesser included offense. If we conclude that such a procedure is constitutionally mandated, then the discharge of the jury in the present case was premature with respect to the murder offenses, and Stone could not be retried thereon even if the jury had not in fact acquitted him.

A brief review of the development of general principles of double jeopardy law is helpful at this point. One of the primary purposes of the double jeopardy protection is to prevent successive prosecutions for the

same offense; this rationale is eloquently expressed in an often-quoted passage from *Green* v. *United States* (1957) 355 U.S. 184, 187-188 [2 L.Ed.2d 199, 204, 78 S.Ct. 221, 61 A.L.R.2d 1119]: "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." We elaborated on this statement in *Larios* v. *Superior Court* (1979) 24 Cal.3d 324, 329 [155 Cal. Rptr. 374, 594 P.2d 491]: "Without the guarantee against double jeopardy, the chances of convicting innocent persons would be increased, both because the state would have unlimited opportunities to prosecute an acquitted defendant and because the exposure of the accused's defense in the first trial would provide the state with a major advantage in preparing for the second."

Recognizing the overriding importance of the prohibition against multiple prosecutions, the Supreme Court recently held that a defendant may not be retried for an offense after an appellate court has reversed his conviction on the ground of the insufficiency of the evidence to support the jury's verdict. (*Burks* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141].) The court declared: "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials." (Fn. omitted.) (*Id.* at p. 11 [57 L.Ed.2d at p. 9]; see also *Greene* v. *Massey* (1978) 437 U.S. 19 [57 L.Ed.2d 15, 98 S.Ct. 2151]; *Hudson* v. *Louisiana* (1981) 450 U.S. 40 [67 L.Ed.2d 30, 101 S.Ct. 970].) The Supreme Court has also applied the principles of collateral estoppel in the double jeopardy context to prevent relitigation of factual issues once decided adversely to the government. (*Ashe* v. *Swenson* (1970) 397 U.S. 436 [25 L.Ed.2d 469, 90 S.Ct. 1189].) These holdings are consistent with the rule that an acquittal triggering the prohibition against multiple prosecutions is "a resolution, correct or not, of some or all of the factual elements of the offense charged" in the defendant's favor. (*United States* v. *Martin Linen Supply Co.* (1977) 430 U.S. 564, 571 [51 L.Ed.2d 642, 651, 97 S.Ct. 1349]; see also *United States* v. *Scott* (1978) 437 U.S. 82, 97 [57 L.Ed.2d 65, 78, 98 S.Ct. 2187].)

In some circumstances, double jeopardy bars a retrial even though no verdict has been rendered. Once jeopardy has attached, discharge of the jury without a verdict is tantamount to an acquittal and prevents a retrial, unless the defendant consented to the discharge or legal necessity required it. (*Arizona* v. *Washington* (1978) 434 U.S. 497, 503-505 [54 L.Ed.2d 717, 726-728, 98 S.Ct. 824]; *United States* v. *Perez* (1824) 22 U.S. (9 Wheat.) 579, 580 [6 L.Ed. 165, 166]; § 1140; *Larios* v. *Superior Court, supra*, 24 Cal.3d 324, 329; *People* v. *Rojas* (1975) 15 Cal.3d 540, 545-546 [125 Cal.Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127]; *Curry* v. *Superior Court, supra*, 2 Cal.3d 707, 712-713; *Paulson* v. *Superior Court, supra*, 58 Cal.2d 1, 5; *Cardenas* v. *Superior Court, supra*, 56 Cal.2d 273, 275.)[7] "Such a legal necessity exists if, at the conclusion of such time as the court deems proper, it satisfactorily appears to the court that there is no reasonable probability that the jury can resolve its difference and render a verdict. Under these circumstances the court may properly discharge the jury and reset for trial." (*People* v. *Rojas, supra*, 15 Cal.3d 540, 545-546; see also §§ 1140, 1141; *Paulson* v. *Superior Court, supra*, 58 Cal.2d 1, 5.)

■ Keeping these general principles in view, we turn to the precise issue here—whether the double jeopardy clause requires formulation of

---

[7]The Supreme Court has at times referred to this aspect of the double jeopardy protection as the defendant's "'valued right to have his trial completed by a particular tribunal.'" (*Arizona* v. *Washington, supra*, 434 U.S. 497, 503 [54 L.Ed.2d 717, 727]; *Illinois* v. *Somerville* (1973) 410 U.S. 458, 466 [35 L.Ed.2d 425, 432, 93 S.Ct. 1066]; *United States* v. *Jorn* (1971) 400 U.S. 470, 484 [27 L.Ed.2d 543, 556, 91 S.Ct. 547]; *Wade* v. *Hunter* (1949) 336 U.S. 684, 689 [93 L.Ed. 974, 978, 69 S.Ct. 834].)

In *Brock* v. *North Carolina* (1953) 344 U.S. 424, 440-441 [97 L.Ed. 456, 466, 73 S.Ct. 349], Justice Douglas observed that as early as 1795, "when the reasons for the guarantee against double jeopardy were still fresh in men's minds," a North Carolina court held: "The rule as laid down in 3 *Co. Inst.* 110, and 1 *Inst.* 227, is general and without exception that a jury in a capital case cannot be discharged without giving a verdict. Afterwards, however, in the reigns of the latter sovereigns of the *Stuart* family, a different rule prevailed, that a jury in such case might be discharged for the purpose of having better evidence against him at a future day; and this power was exercised for the benefit of the crown only, but it is a doctrine so abhorrent to every principle of safety and security that it ought not to receive the least countenance in the courts of this country. In the time of *James* the second, and since the Revolution, this doctrine came under examination, and the rule as laid down by my *L.Coke* was revived with this addition, that a jury should not be discharged in a capital case unless for the benefit of the prisoner .... In the present case the jury were suffered by the court's officer to separate without giving a verdict. As they could not agree to convict, it is strong evidence of the party's innocence; and perhaps he could not be tried again with the same advantage to himself as then. Perhaps his witnesses are dead, or gone away, or their attendance not to be procured, or some accident may prevent their attendance. We will not again put his life in jeopardy, more especially as it is very improbable we shall be able to possess him of the same advantages." (*State* v. *Garrigues* (1795) 2 N.C. 241, 242.)

a procedure for the receipt of partial verdicts in these circumstances. Under the statutory scheme in California, a prosecutor has the discretion to charge a lesser included offense and the greater offense in separate counts. (§ 954.) Alternatively, he may charge only the greater offense. (See § 1159.) The latter is the usual practice. Thus, a charge of murder includes by implication a charge of the lesser degree of murder as well as voluntary and involuntary manslaughter. (§ 1159; *In re McCartney* (1966) 64 Cal.2d 830, 831 [51 Cal.Rptr. 894, 415 P.2d 782]; *People* v. *Gilmore, supra*, 4 Cal. 376, 380.) As the court stated in *Gilmore* (4 Cal. at p. 380), "An indictment, by operation of law for murder, is also an indictment for manslaughter, and every less offense that may be included under the charge of murder, *just as much as though it were charged in distinct and separate counts.*" (Italics added.) When a prosecutor chooses to charge only the greater offense, the trial judge must instruct *sua sponte* on lesser included offenses when substantial evidence adduced at trial indicates that one or more of the elements necessary to sustain a conviction on the greater offense may be lacking. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-716 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281].)

If the prosecutor charges different offenses in separate counts and the jury reaches a verdict as to some counts but not as to others, the jury "may render a verdict as to the charge or charges upon which they do agree, and the charges on which they do not agree may be tried again." (§ 1160; see also *Selvester* v. *United States* (1898) 170 U.S. 262, 269-270 [42 L.Ed. 1029, 1032, 18 S.Ct. 580].) In that situation, the trial court is required to receive a verdict as to those counts on which the jury has reached agreement; failure to do so bars retrial on such counts. (*People* v. *Ham* (1970) 7 Cal.App.3d 768, 776 [86 Cal.Rptr. 906], disapproved on other grounds in *People* v. *Compton* (1971) 6 Cal.3d 55, 60, fn. 3 [98 Cal.Rptr. 217, 490 P.2d 537].) The rule of section 1160 thus allows a jury to render a partial verdict of acquittal on a greater offense without reaching a verdict on a lesser included offense charged in a separate count. (§ 954; *People* v. *Allen* (1974) 41 Cal.App.3d 821, 825 [116 Cal.Rptr. 493].)

For the purpose of delineating the scope of the double jeopardy protection, we believe the situation before us to be logically indistinguishable from the case in which a greater offense and a lesser included offense are charged in separate counts. It would be anomalous to for-

mulate a rule that prevents a trial court from receiving a partial verdict on a greater offense on which the jury clearly favors acquittal merely because the prosecutor elected to charge only that offense, and left it to the court to instruct on any lesser included offense supported by the evidence. In addition to seriously infringing on the defendant's double jeopardy interest in avoiding retrial for offenses on which he has been factually acquitted, such a rule would make his substantive rights turn on the formality of whether he was charged in separate counts with the greater offense and the lesser included offense, or was charged in a single count with only the greater offense.

The Supreme Court flatly rejected such a distinction in *Green* v. *United States, supra*, 355 U.S. 184. There, the court adopted the rule that a defendant who succeeds in obtaining a reversal on appeal of a conviction of a lesser included offense may not be retried for the greater offense. *Green* relied on a dual rationale. First, when a jury convicts the defendant of a lesser included offense, although it may not expressly reach a verdict on the greater offense, it acquits on the greater offense by implication. Second, a judge's failure to give the jury the opportunity to return an express verdict of acquittal on the greater offense gives rise to a plea of once in jeopardy as to that offense barring retrial thereon, even though the jury did not render a verdict on the offense. (*Id.*, at pp. 190-191 [2 L.Ed.2d at pp. 205-206].)

In *Green* the defendant had been charged in only one count, but the court made it clear that his substantive rights should not turn on that fact: "In substance the situation was the same as though Green had been charged with these different offenses in separate but alternative counts of the indictment. The constitutional issues at stake here should not turn on the fact that both offenses were charged to the jury under one count." (*Id.* at p. 190, fn. 10 [2 L.Ed.2d at p. 205]; see also *Price* v. *Georgia* (1970) 398 U.S. 323 [26 L.Ed.2d 300, 90 S.Ct. 1757].) For the same reason, we decline to perpetuate the artificial distinction that has developed between expressly charged and impliedly charged lesser included offenses.[8]

---

[8]The following passage from *People* v. *Doolittle, supra*, 23 Cal.App.3d 14, illustrates the confusion that has followed in the wake of *Griffin*: "we apprehend that in the trial of an offense which necessarily includes a lesser offense, as was the case here, the jury, before they can return a verdict, must on the one hand, agree that the defendant is guilty of the offense charged or any included offense or, on the other hand, agree that he is not guilty of any offense, whether the greater or the lesser. We are of the opinion that although the law contemplates the conviction of an accused of a lesser offense

Accordingly, we hold that in all cases in which the jury has not yet begun deliberations as of the date this decision becomes final, the trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense. Failure to do so will cause a subsequently declared mistrial to be without legal necessity.

To guide the trial courts of this state in fulfilling the obligations which this rule entails, we suggest procedures derived by analogy from the multiple count situation (see *Sturms v. Justice Court* (1970) 4 Cal.App.3d 36, 39 [84 Cal.Rptr. 69]; *State v. Castrillo, supra*, 566 P.2d 1146, 1149; see also N.Y. Crim. Proc. Law, § 310.70).[9]

When a trial judge has instructed a jury on a charged offense and on an uncharged lesser included offense, one appropriate course of action would be to provide the jury with forms for a verdict of guilty or not guilty as to each offense. The jury must be cautioned, of course, that it should first decide whether the defendant is guilty of the greater offense before considering the lesser offense, and that if it finds the defendant guilty of the greater offense, or if it is unable to agree on that offense, it should not return a verdict on the lesser offense.

Alternatively, the court may decide to wait and see whether the jury is unable to reach a verdict; if it is, the court should then inquire whether the jury has been able to eliminate any offense. If the jury declares

when the evidence is insufficient to justify conviction for the greater offense charged [citations], an acquittal of the greater charge does not result because the jury may have deemed the evidence insufficient to support that charge unless the jury agrees that he is guilty of a lesser included offense or agrees that he is not guilty of the crime charged, which finding includes a determination that he is not guilty of any included offense." (Fn. omitted; *id.* at pp. 19-20.) This rationale is contrary to our holding in the present case, and it is disapproved.

Similarly, existing jury instructions suggest that a partial verdict on a greater offense is impermissible. (See CALJIC No. 8.74 (1976 rev.).) To the extent that they do so, they are also disapproved.

[9]On several previous occasions, we have prescribed judicial rules of criminal procedure when necessary to effectuate a fundamental constitutional principle or a specific constitutional protection of individual liberty. (*People v. Rhodes* (1974) 12 Cal.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363]; *People v. Vickers* (1972) 8 Cal.3d 451, 461-462 [105 Cal.Rptr. 305, 503 P.2d 1313]; *Bryan v. Superior Court* (1972) 7 Cal.3d 575, 586-589 [102 Cal.Rptr. 831, 498 P.2d 1079]; *People v. Riser* (1956) 47 Cal.2d 566 [305 P.2d 1]; *People v. Cahan* (1955) 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R.2d 513].)

itself hopelessly deadlocked on the lesser offense yet unanimous for acquittal on the greater offense, and the court is satisfied that the jury is not merely expressing a tentative vote but has completed its deliberations, the court must formally accept a partial verdict on the greater offense. It is within the discretion of the court to order further deliberations if it perceives a reasonable probability that a verdict will be reached that will dispose of the entire proceeding.

## II.

Broadly stated, the next issue is whether defendant may be retried on the lesser included offense of manslaughter. He asserts two grounds for preventing such a retrial. First, he contends that section 1023 bars retrial on an uncharged lesser included offense after a verdict of acquittal of a charged greater offense. Second, he asserts that retrial is barred because the trial court prematurely discharged the jury. We address these contentions in order.

Section 1023 provides that an acquittal "is a bar to another prosecution for the offense charged . . . or for an offense necessarily included therein, of which [the accused] might have been convicted under that accusatory pleading." The language of the statute seems to require that an acquittal of a greater offense must bar retrial for a lesser included offense under all circumstances. However, the cases have rejected such a rigid construction, holding that an acquittal of a greater offense does not bar retrial for a lesser included offense as to which the jury was deadlocked, when the lesser included offense is expressly charged in a separate count. In *People* v. *Webb* (1967) 66 Cal.2d 107, 127 [56 Cal. Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708], we stated that "a retrial of a count on which the jury fails to agree is not 'another prosecution' within the meaning of Penal Code section 1023, and hence is not barred by the double jeopardy doctrine." (See also *People* v. *Tideman* (1962) 57 Cal.2d 574, 583 [21 Cal.Rptr. 207, 370 P.2d 1007]; *People* v. *James* (1980) 102 Cal.App.3d 108, 111 [162 Cal.Rptr. 263]; *People* v. *Allen, supra,* 41 Cal.App.3d 821, 825.) These cases represent but a specific application of the general rule that a retrial after a jury deadlock does not violate the double jeopardy clause.

Nevertheless, in the situation in which the jury favors acquittal on the charged greater offense but cannot agree as to an uncharged lesser included offense contained by implication in the same count, it has been held in one case that section 1023 bars retrial on the lesser included of-

fense. (*Menjou* v. *Superior Court* (1932) 128 Cal.App. 117 [16 P.2d 1007]; cf. *People* v. *Allen* (1980) 110 Cal.App.3d 698, 702-704 [168 Cal.Rptr. 227].) In *Menjou*, the jury reported that it had agreed to find the defendant innocent of the charged offense of second degree murder, but remained deadlocked between acquittal and a guilty verdict on the uncharged lesser included offense of manslaughter. The trial judge received a verdict of not guilty as to the second degree murder charge and set the case for retrial on the issue whether the defendant was guilty of manslaughter. The Court of Appeal mechanically held that the "plain language" of section 1023 prevented a retrial for the lesser included offense of manslaughter after a verdict of acquittal of the greater offense of second degree murder. That result was not constitutionally required. Since it was clear from the facts of *Menjou* that the jury had not arrived at a verdict as to the offense of manslaughter, the defendant had no identifiable constitutional interest in preventing a retrial for that offense.[10]

The result in *Menjou* rests solely on its interpretation of the language of section 1023. That language, we believe, envisions the situation in which a jury acquits a defendant of the greater offense, yet remains silent as to the lesser offense. In that event, it would be unfair to subject the defendant to another trial, because the probable intent of the jury was to acquit him of the lesser offense as well. Section 1023 may also have been directed to preventing a prosecutor from charging only the single, greater offense, and then, after failing to obtain a conviction on that charge, subsequently trying the same defendant on each of the lesser included offenses in succession until finally obtaining a conviction. Under modern procedures, of course, there is no longer a possibility of such vindictive multiple prosecutions. But the language of section 1023, unfortunately, exceeds the scope of its original purpose.

---

[10]Section 1023 was amended in 1951, the sole change being the substitution of the words "accusatory pleading" for previous references to "indictment or information." Although we are cognizant of the rule that a statutory reenactment subsequent to a judicial interpretation of the statute is ordinarily presumed to affirm the preexisting interpretation (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 369 [134 Cal.Rptr. 197, 556 P.2d 297]), there are strong reasons for departing from that rule of construction under the circumstances of this case. In addition to the above-discussed ground for rejecting the rule of *Menjou*, we stress that canons of statutory construction are merely aids to ascertaining probable legislative intent. Here, there was but a single judicial declaration, by a lower appellate court, interpreting section 1023 as applied to this factual situation. It is highly unlikely that under those circumstances the Legislature intended to codify the rule of *Menjou* when, 19 years later, it made minor changes in wording unrelated to the substance of that decision.

■ We hold that when a jury acquits a defendant of an offense, section 1023 does not bar a retrial for an offense necessarily included therein on which the jury is unable to agree, regardless of whether the lesser included offense is charged in a separate count. Defendant herein has no constitutional interest in preventing his retrial for manslaughter; in contrast, there is an important public interest in finally determining whether he committed that offense. To the extent that its holding is inconsistent herewith, *Menjou* is disapproved.

■ We reach the final issue: whether the trial court's refusal to accept a partial verdict of acquittal on the murder charge caused the mistrial on manslaughter to be premature. Defendant argues that the court should have received a partial verdict on the murder charge; we have previously agreed with this premise. But it does not follow, as defendant suggests, that the action on the murder charge made it less likely that the jury would be able to reach a verdict on manslaughter. We fail to perceive any logical support for this contention. The facts clearly showed that the jury had unanimously rejected the possibility of convicting defendant of murder, and we rely on those facts for our conclusion that retrial on the murder charge should be barred. We cannot now accept the contradictory assertion that the jury may have been still attempting to compromise between the murder charge and acquittal. The jury twice indicated after individual polling that there was no reasonable probability that a verdict could be reached on the offenses of voluntary and involuntary manslaughter. It is well settled that a defendant may be retried for offenses as to which the jury is deadlocked. (§§ 1140, 1141; *People v. Rojas, supra,* 15 Cal.3d 540, 545-546; *Paulson v. Superior Court, supra,* 58 Cal.2d 1, 5.) The determination of the apparent state of mind of the jurors and the decision whether further deliberations will likely result in a unanimous verdict properly rests in the sound discretion of the trial judge, who has been able to personally observe the progress of the jurors' deliberations. (See *People v. Rojas, supra,* 15 Cal.3d at p. 546; *Paulson v. Superior Court, supra,* 58 Cal.2d at p. 6; *People v. Ham, supra,* 7 Cal.3d 768, 775.) Here it is plain that the trial court correctly exercised its discretion in declaring a mistrial as to the manslaughter offenses, and defendant may therefore be retried for those offenses.

Let a peremptory writ of prohibition issue preventing retrial of defendant on a charge of murder; the trial court is directed to enter a judgment of acquittal on that charge. As to the manslaughter offenses, the writ is denied.

Bird, C. J., Newman, J., and Broussard, J., concurred.

RICHARDSON, J.—I respectfully dissent. The majority's prospective rule requires trial courts "to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense." (*Ante*, p. 518.) In the absence of such an opportunity, "a subsequently declared mistrial [will be deemed] to be without legal necessity." (*Ibid.*) The majority then applies this newly fashioned rule to the instant case and forbids retrial of this defendant on the charge of murder.

The error in the majority's reasoning is that the jury here did not enter a partial verdict nor, at the time of the trial, was the court required to afford the jury an opportunity to do so. Our own opinion in *People* v. *Griffin* (1967) 66 Cal.2d 459 [58 Cal.Rptr. 107, 426 P.2d 507], is very instructive. In *Griffin*, we rejected the defendant's assertion that a retrial for first degree murder violated double jeopardy where, in the earlier trial, after the jury had been discharged, the foreman disclosed in open court that the jury stood at 10 for acquittal and 2 for second degree murder. We stated that "We may not infer from the foreman's statement that the jury had unanimously agreed to acquit of first degree murder. There is no reliable basis in fact for such an implication, for the jurors had not completed their deliberations and those voting for second degree murder may have been temporarily compromising in an effort to reach unanimity." (66 Cal.2d at p. 464.) Similarly, here the jurors were never put to the test and required actually to enter a judgment on the greater offense. The record discloses that at the time the jury first claimed that it was deadlocked, it stood as follows:

| | |
|---|---|
| First degree murder | No votes |
| Second degree murder | No votes |
| Voluntary manslaughter | Four votes |
| Involuntary manslaughter | Two votes |
| Justifiable homicide | Six votes |
| Acquittal | No votes |

After the jury returned for further deliberations and again concluded that it could not reach a verdict, the jury foreman stated that the jurors then stood: "Three voluntary [manslaughter], five involuntary [manslaughter], four justifiable [homicide]."

Thus between the first and second declarations of deadlock, at least three jurors had changed their votes. This clearly indicates to me that this jury was engaged in continuing negotiation and compromise. Those favoring voluntary manslaughter dropped. Those favoring involuntary manslaughter increased substantially, and those favoring justifiable homicide dropped. This was a jury which, to use a trial lawyer's term, was "in movement." It had not settled into firm, fixed, immovable positions under these circumstances.

As in *Griffin*, we do not know whether the reported votes represented a "temporary compromise" reached by any particular juror in an attempt to reach a unanimous verdict. The jurors were never instructed that their failure to reach unanimity on a lesser verdict would mean an acquittal on a greater offense. Nor were they ever required actually to reach and report a final verdict on the greater offenses. This fact readily distinguishes this case from those in which federal juries are instructed to the effect that "if the jury should unanimously find the accused 'Not Guilty' of the crime charged in the indictment . . . *then* the jury must proceed to determine the guilt or innocence of the accused as to any lesser offense which is necessarily included in the crime charged." (Devitt & Blackmar, Federal Jury Practice and Instructions (3d ed. 1977) § 18.05, italics added.) A form of this instruction was approved in *United States* v. *Tsanas* (2d Cir. 1978) 572 F.2d 340, 344-347 (cert. den. 435 U.S. 995 [56 L.Ed.2d 84, 98 S.Ct. 1647]).

The votes reported by the foreman here merely demonstrated, at a particular time, the closest that the jury could come to a unanimous verdict. They were flash pictures taken of jury negotiations at particular moments in their deliberations. The votes did not reveal what the jurors would have done if they had been required actually to vote on each possible offense as a separate matter. Most certainly, the reported votes did not show that the jurors had unanimously *reached a verdict* on the greater offenses as would be the case under the standard federal instructions above described.

Nor does *Green* v. *United States* (1957) 355 U.S. 184 [2 L.Ed.2d 199, 78 S.Ct. 221, 61 A.L.R.2d 1119], cited by the majority (*ante*, p. 515) compel a different conclusion. In *Green*, the jurors had reached unanimity on the lesser included offense, thus leaving no room for speculation on their finding on the greater offense. Indeed, if the federal instruction cited above had been given, the *Green* jurors' verdict on the lesser offense clearly demonstrated that they had unanimously reached

a verdict of "not guilty" on the greater offense. Once a jury has reached unanimity as to one offense, it has implicitly or explicitly rejected the possible alternative verdicts. Here, however, no such final unanimous verdict was reached. The votes thus could not be said to be a final product of the jurors' deliberation.

Moreover, in my view, if California is now to adopt a "partial" verdict policy in criminal cases it should be accomplished by legislative enactment as has been done by New York (*ante*, p. 512), rather than by judicial construction in a case in which no final verdict had been reached.

Under the circumstances, I cannot conclude that the jury here had "completed its deliberations . . . ." (*Ante*, p. 519.) I therefore would deny the writ and permit retrial of defendant on the charge of murder.

KAUS, J.—I, too, must dissent. I agree with Justice Richardson that, in principle, this case is indistinguishable from *People* v. *Griffin* (1967) 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507]. The majority's attempt to distinguish *Griffin* appears to be based on a misreading of the record that was shared by the trial court: the opinion states that here "the foreman twice declared . . . that the jury stood firmly and finally 12 to nothing in favor of acquittal of both degrees of murder." As I read the record, the foreman did nothing of the sort: he merely reported the breakdown of the votes and said that there was no hope for a verdict. No one will ever know whether this was so in spite of the heroic efforts of one or more jurors who would have voted for a murder conviction to compromise on the basis of a manslaughter verdict. This possibility was apparently overlooked by the trial court which ruled "that there is a clear expression that . . . there is not one juror of the 12 who believes that the evidence is sufficient to support a finding of . . . murder . . . ." This statement—the majority's second basis for distinguishing *Griffin*—was made while the jury was out of the courtroom: if the court was mistaken—as it very easily might have been—the foreman was not around to protest.

Thus, in my view, the record here—as in *Griffin*—does not demonstrate that a partial verdict was reached. Accordingly, I dissent from the majority's conclusion that defendant may not be retried on the murder charges.

Although I see no bar to a retrial, the trial court's comments at the first trial suggest to me that it may well have been under a misapprehension as to the scope of a jury's authority to return a partial verdict under present California law. Section 1160 of the Penal Code currently provides that "[w]here two or more offenses are charged in any accusatory pleading, if the jury cannot agree upon a verdict as to all of them, they may render a verdict as to the charge or charges upon which they do agree, and the charges on which they do not agree may be tried again." Since, for present purposes at least, there can be no rational distinction between accusatory pleadings which expressly charge lesser included offenses and those which do so impliedly, the trial court could appropriately have informed the jury of its power to render a verdict on less than all of the offenses on which it had been instructed. (See *Sturms* v. *Justice Court* (1970) 4 Cal.App.3d 36, 39 [84 Cal.Rptr. 69].) Because the present record does not demonstrate that the jury was prepared to render a unanimous verdict as to any offense, however, I do not think defendant is entitled to the writ relief he seeks. (See also *People* v. *Finch* (1963) 213 Cal.App.2d 752, 762 [29 Cal.Rptr. 420].)

It should go without saying that since no partial verdict had been reached, the discussion of the constitutional issues decided by the majority is academic.

On June 15, 1982, the dissenting opinion by Justice Kaus was modified to read as printed above.