Filed 2/18/25  P. v. Naumov CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MAKSIM IGOREVICH NAUMOV,<br><br>    Defendant and Appellant. | 2d Crim. No. B330330<br>(Super. Ct. No. 23F-00023)<br>(San Luis Obispo County) |

Maksim Igorevich Naumov appeals from the judgment after a jury convicted him of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 2) and two counts of making criminal threats (§ 422, subd. (a); counts 3 and 4).  The trial court sentenced Naumov to three years in state prison.  Naumov contends his assault with a deadly weapon conviction must be reversed due to instructional error, and contends insufficient evidence supports his convictions for criminal threats.  We affirm.

---

[1] Statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL HISTORY

Five band members, including Enrique and Norman, had been practicing inside a tire store in San Luis Obispo on Higuera Street. At around 7 p.m. they went outside to the parking lot for a break. While outside, a stranger (Naumov) suddenly emerged from "nowhere." He was yelling and grabbed Enrique from behind. Naumov then pulled a small knife on Enrique and held it a few inches from Enrique's neck, threatening to kill him. The knife appeared to be double-bladed. Naumov told the band members, "I'm going to kill him," referring to Enrique, while holding the knife near Enrique's neck for 10 to 15 seconds.

Enrique believed Naumov would kill him. He nevertheless told his band members to stay calm and also managed to calm down Naumov, who let go. Enrique then told Naumov that he and his companions did not want more problems. Enrique approached Naumov and put his arm around him while walking toward Higuera Street, trying to calm him down. Naumov still held the knife. Enrique hoped Naumov would just leave.

Norman then grabbed for the knife and wrestled Naumov down to the ground. During the struggle Naumov told Norman that he did not know who they were "messing with" and that Naumov belonged to the Russian Mafia. Naumov was "angry" and "violent" and said, "I'm gonna find you guys." He also said, "You guys have an enemy now." "I'm gonna kill you guys. I know where you are."

Norman believed the threats were directed at him. He wrestled the knife from Naumov and let him go. Norman cut his hand while trying to grab the knife.

Another band member called the police. After running away a few steps, Naumov turned around and approached the

band members again while trying to punch them and threatening to kill them. The band members were able to get Naumov to the ground and hold him down until police arrived.

Prosecutors charged Naumov with attempting to rob Enrique, assaulting him with a deadly weapon, and making criminal threats against him (counts 1-3), and making criminal threats against Norman (count 4). At trial, both Enrique and Norman testified they did not know Naumov and were still afraid of him. Naumov now knew where to find them. Naumov admitted at trial that he walked up to a group of strangers and pulled a knife on Enrique. The defense did not dispute that the knife was a deadly weapon.

With respect to the charge for assault with a deadly weapon, the jury was instructed on the lesser included offense of simple assault. The jury returned a verdict of not guilty on count 1 for attempted robbery and guilty verdicts on counts 2 through 4. Naumov waived jury on the charged aggravating factors, and the trial court found them true. The court sentenced Naumov to the midterm of three years in state prison for count 2 and concurrent terms of two years for counts 3 and 4.

## DISCUSSION

### *Instructional error*

Naumov contends his conviction for assault with a deadly weapon must be reversed because the trial court did not instruct the jury with CALCRIM No. 3517. We disagree.

We review Naumov's claim of instructional error de novo. (*People v. Wilson* (2021) 11 Cal.5th 259, 295 (*Wilson*).)

CALCRIM No. 3517 advises jurors that they may consider the greater and lesser offenses in any order, but they cannot find

the defendant guilty of the lesser offense unless they have found the defendant not guilty of the greater offense.

A trial court has a sua sponte duty to give " ' " 'instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]' " ' " (*Wilson*, *supra*, 11 Cal.5th at p. 295.) A court must instruct on lesser included offenses when substantial evidence supports them. (*People v. Breverman* (1998) 19 Cal.4th 142, 177, disapproved on another ground by *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) Our Supreme Court has reaffirmed the "acquittal-first rule, requiring the jury to expressly acquit the defendant before rendering a verdict on the lesser offense." (*People v. Fields* (1996) 13 Cal.4th 289, 309 (*Fields*); *People v. Kurtzman* (1988) 46 Cal.3d 322, 324-325 (*Kurtzman*).)

In *Stone v. Superior Court* (1982) 31 Cal.3d 503 (*Stone*), the California Supreme Court stated a judicially declared rule of criminal procedure: "When a trial judge has instructed a jury on a charged offense and on an uncharged lesser included offense, one appropriate course of action would be to provide the jury with forms for a verdict of guilty or not guilty as to each offense. The jury must be cautioned, of course, that it should first decide whether the defendant is guilty of the greater offense before considering the lesser offense, and that if it finds the defendant guilty of the greater offense, or if it is unable to agree on that offense, it should not return a verdict on the lesser offense." (*Id*. at p. 519 & fn. 9.)

A trial court must instruct the jury that it cannot convict a defendant of a lesser offense unless it finds the defendant is not

4

guilty of the greater offense. (*Fields*, *supra*, 13 Cal.4th at pp. 309-310.) But a trial court errs if it dictates the order in which to consider the charged and lesser included offenses. (*Kurtzman*, *supra*, 46 Cal.3d at p. 325.) Thus, "a trial court should not tell the jury it must first unanimously acquit the defendant of the greater offense before deliberating on or even considering a lesser offense." (*People v. Dennis* (1998) 17 Cal.4th 468, 536.)

Here, the trial court properly instructed the jury on simple assault as a lesser included offense of assault with a deadly weapon. The court instructed the jury: "If you do not find the defendant guilty of the crime charged in Count 2, assault with [a] [d]eadly [w]eapon, you may find Defendant guilty of the lesser crime of Simple Assault."

Naumov contends reversal is required because without CALCRIM No. 3517 "the jury might believe it must first focus solely on the question of liability for the greater offense." As Naumov points out, CALCRIM No. 3517 informs jurors: "It is up to you to decide the order in which you consider [each crime] and the relevant evidence." It also informs jurors: "You do not have to reach a verdict on the greater crime before considering a lesser crime."

We agree the trial court should have instructed the jury with CALCRIM No. 3517. But based on the record before us, we conclude the error is harmless. The trial court correctly instructed the jury on the acquittal-first rule, that it may find the defendant guilty of the lesser offense of simple assault "[i]f you do not find the defendant guilty" of assault with a deadly weapon. It also instructed the jury on reasonable doubt. We presume jurors understood and followed the instructions. (*People v. Edwards* (2013) 57 Cal.4th 658, 746.) And consistent with *Stone*, *supra*, 31

5

Cal.3d at page 519, jurors were provided with verdict forms allowing the jury to reach verdicts of guilty or not guilty for assault with a deadly weapon and the lesser included offense of simple assault.

At no point did the trial court suggest to the jury that it had to first deliberate on the greater offense before considering the lesser offense. Nor does the record reflect the jury was confused about the verdict forms before it rendered its guilty verdict on assault with a deadly weapon. The admonition of CALCRIM No. 3517, that the court can accept a verdict of guilty on a lesser offense *only* if it finds the defendant not guilty of the greater offense, was unnecessary because the court correctly instructed the jury on the acquittal-first rule when it explained the lesser offense of simple assault.

The error is also harmless because overwhelming evidence supports Naumov's conviction for assault with a deadly weapon. Naumov grabbed Enrique from behind, held a knife to his neck, and threatened to kill him. Because the knife was used in a manner likely to result in the application of force (§ 245, subd. (a)(1)), there is no reasonable probability that the jury would have rendered a not guilty verdict on the greater charged offense of assault with a deadly weapon. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Berryman* (1993) 6 Cal.4th 1048, 1078 [*Watson* standard of prejudice applies to *Kurtzman* instructional error].) Reversal is not warranted.

*Sufficiency of the evidence for criminal threats*

Naumov contends there was insufficient evidence to support his convictions for making criminal threats in counts 3 and 4. Our review is limited to determining whether substantial evidence—"evidence that is reasonable, credible, and of solid

6

value"—supports the judgment. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We view the evidence "in the light most favorable to the prosecution[,] and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid.*) " 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the . . . jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " (*Ibid.*) Reversal " 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict[s]." (*Ibid.*)

Our Supreme Court has aptly noted that "not all threats are criminal." (*In re George T.* (2004) 33 Cal.4th 620, 630.) Rather, a criminal threats conviction under section 422 requires proof that: (1) "the defendant 'willfully threaten[ed] to commit a crime [that] will result in death or great bodily injury to another person' "; (2) "the defendant made the threat 'with the specific intent that the statement [was] to be taken as a threat, even if there [was] no intent of actually carrying it out' "; (3) the threat was, " 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened[] a gravity of purpose and an immediate prospect of execution of the threat' "; (4) "the threat actually caused the person threatened 'to be in sustained fear for [their] own safety or for [their] immediate family's safety' "; and (5) "the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

With respect to his conviction for making a criminal threat against Enrique (count 3), Naumov contends there was insufficient evidence that a reasonable person would be in sustained fear. He maintains that Enrique's act of walking away with Naumov proves that any fear was merely transitory. We are not persuaded. Defendant approached Enrique from behind and threatened to kill him while holding a double-bladed knife to his neck. The assault was captured on surveillance video. Enrique believed that Naumov would kill him. And at trial, Enrique testified that he was still in fear. Based on this evidence, a reasonable jury could reasonably find that Enrique was in sustained fear. That Enrique tried to diffuse the situation by trying to calm Naumov down does not undermine the jury's finding. The jury, not us, determines the credibility of witnesses, weighs the evidence, and resolves conflicts in the testimony. (*People v. Mumin* (2023) 15 Cal.5th 176, 202.)

With respect to his conviction for making a criminal threat against Norman (count 4), Naumov contends there was insufficient evidence of an immediate threat that would cause a reasonable person to be in sustained fear without evidence that Naumov possessed a weapon and confirmation that he in fact was a member of the "Russian Mafia." Again, we are not persuaded. " '[T]he determination [of] whether a defendant intended [for their] words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate[,] and specific [that] they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat[,] can be based on all the surrounding circumstances and not just on the words alone.' " (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1431.) And here, Naumov told Norman that he was in the "Russian Mafia,"

8

would find him, and kill him. This statement was not made in a vacuum, but after Naumov had just held Enrique at knifepoint, threatened to kill him, and threatened "I want to kill you guys" while physically resisting the band members' efforts to subdue him. Given these circumstances, a reasonable jury could conclude that Naumov's threat carried an immediate prospect of violence, especially since Naumov was a stranger. "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

There was also sufficient evidence that Norman was in sustained fear. A person's fear is "sustained" if it "extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "The victim's knowledge of defendant's prior conduct is relevant in establishing that [they were] in a state of sustained fear." (*Ibid.*) So are the circumstances surrounding the defendant's threats and their subsequent actions. (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221.) Here, Norman watched Naumov assault Enrique with a knife while threatening to kill him. It took a group of five men to subdue Naumov and he continued to resist. And at trial Norman testified that he was still in fear. It is not our role to substitute our evaluation of a witness's credibility for that of the fact finder. (*People v. Smith* (2005) 37 Cal.4th 733, 739.) The facts here could reasonably support the jury's finding that Norman's fear was more than momentary, fleeting, or transitory.

Naumov contends his statement that he belonged to the "Russian Mafia" and his threat to kill Norman were akin to saying he was the Incredible Hulk. He contends that no

"reasonable person" would take the threat seriously.  But Naumov discounts that, just moments before, Norman watched Naumov wield a knife inches away from Enrique's neck while threatening to kill him.  This conduct was not merely an emotional outburst.  It was criminal conduct and the jury could conclude that Norman's fear was reasonable based on the totality of the circumstances.  Naumov's sufficiency-of-the-evidence challenge fails.

DISPOSITION

The judgment is affirmed.
<u>NOT TO BE PUBLISHED.</u>


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


CODY, J.

Timothy S. Covello, Judge

Superior Court County of San Luis Obispo

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.