Filed 6/3/16  P. v. Hanson CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RANDY CYRIL HANSON,<br><br>Defendant and Appellant. | F069682<br><br>(Kern Super. Ct. No. SC068162A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Michael G. Bush, Judge.

Jonathan E. Berger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*] Before Poochigian, Acting P.J., Franson, J. and Smith, J.

# INTRODUCTION

The Three Strikes Reform Act of 2012 (hereinafter Proposition 36 or the Act) permits third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies to petition for resentencing. (Pen. Code, § 1170.126 et seq.)[1] If a petitioning offender satisfies the statute's eligibility criteria, they are resentenced as a second strike offender "unless the court, in its discretion, determines that resentencing … would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

Following the enactment of Proposition 36, defendant Randy Cyril Hanson filed a petition for recall of sentence. The trial court found defendant posed an unreasonable risk to public safety, however, and denied the petition. On appeal, defendant contends: (1) the definition of "unreasonable risk of danger to public safety" included in section 1170.18, subdivision (c), applies to Proposition 36; (2) the trial court abused its discretion by denying defendant's petition for resentencing; (3) defendant was entitled to have his dangerousness proven beyond a reasonable doubt, or at least by clear and convincing evidence; and (4) defense counsel was ineffective for failing to object to the trial court's use of a preponderance of the evidence standard of proof. We affirm.

# FACTS

On October 10, 1997, a jury found defendant guilty of one count of vehicle theft (Veh. Code, § 10851). The jury also found defendant had two prior strikes: a 1989 conviction for first degree burglary (§ 460.1), and a second conviction for first degree burglary from 1992. Defendant was sentenced as a third strike offender to a term of 25 years to life in prison.

On January 9, 2013, defendant filed a petition for recall of his third strike sentence pursuant to Proposition 36. Defendant argued he was eligible for resentencing because

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

he was not convicted of a serious or violent offense, and he was not subject to any of the Act's statutory exclusions.

The People filed opposition and did not dispute defendant's statutory eligibility to be resentenced. However, the People argued he was excluded from resentencing because his release would pose an unreasonable risk to public safety. The People noted defendant's criminal record contained 15 adult convictions, including two convictions for first degree burglary, two convictions for misdemeanor spousal abuse, and a conviction for driving under the influence. The People also noted defendant had committed several rule violations during his incarceration, including violations for possession of drug paraphernalia and refusing a cellmate, multiple violations for manufacturing alcohol, multiple violations for fighting, and one violation for battery with a weapon after he was found to have sliced an inmate with a razor blade. The People also stated that defendant's mental health records showed a history of poly-substance abuse, mood problems, paranoia, depression, and homicidal ideations.

**Defendant's hearing testimony**

On June 13, 2014, a hearing was held on defendant's petition for recall. Defendant was the only witness. He was 55 years old. Defendant testified his first adult conviction was in 1977 for second degree burglary. He was sentenced to county jail but escaped, and received a misdemeanor conviction for that offense. He had a misdemeanor conviction for grand theft in 1981 when he stole a battery because his car was dead. He had a misdemeanor conviction for spousal abuse because he and his wife were both on alcohol and drugs, and they fought outside a bar. In 1985, he had another misdemeanor conviction for walking away from a hospital while he was already serving time in county jail.

Defendant testified his current conviction was for stealing a car, after he bought a stolen vehicle for $500. His first trial ended in a hung jury; he was convicted after a second jury trial, and sentenced to the third strike term. He committed the prior strike

3

convictions for residential burglary in 1989 and 1992 while he was using alcohol and "speed." In the 1989 burglary, he broke into someone's house and took "a little jewelry" so he could get drugs; he admitted the total loss was $1,825. He committed the 1992 burglary after he bought "weed" from a neighbor and the neighbor "burnt me on the weed." He broke into the neighbor's house because he "just wanted my money back," he took a boom box, and he figured it was "worth $200 he gave me." Defendant had additional misdemeanor convictions for spousal abuse and resisting in 1995, when he ran away from the police after an argument with his wife about their daughter.

On cross-examination, defendant admitted he also had a juvenile record and committed burglary in 1974 and was sent to the California Youth Authority. In 1975, he was found to have obstructed an officer and recommitted to CYA. He was paroled in 1977, and had his first adult conviction that year.

Defendant testified that he had suffered from substance abuse in the past, but he had not consumed any drugs or alcohol since 2002. However, he admitted he was cited for prison rule violations for possession of alcohol in 2005 and possession of a syringe in 2007. Defendant stated the syringe belonged to his cellmate, and another cellmate made the alcohol for inmates but defendant did not drink anything.

Defendant testified he did not have any violent prison rule violations until after he agreed to provide the police with information on a prison murder he witnessed in 2006. Defendant stated he began refusing cellmates and getting into confrontations and fights with other inmates as a result of the hostility and anger he faced as a known informant. He denied slicing another inmate with a razor blade, even though he received a prison rules violation for battery on an inmate with a weapon. Defendant insisted the injured inmate inflicted the injury on himself as part of the retaliation against defendant for being an informant.

On cross-examination, defendant was asked about several mental health reports generated by prison experts. A report from 2009 stated he had a history of adjustment

4

disorder, mood problems, antisocial problems, depression, and polysubstance dependence. A report from 2010 stated he had poor impulse control, a history of homicidal ideation, and he admitted being paranoid. In 2012, defendant told a prison therapist that he had difficulty controlling himself and felt like hitting people.

Defendant testified he was currently taking psychiatric medications. He was depressed because of what he was going through in prison, and he was addicted to drugs. He did not think about killing other people, but he was scared and depressed about the murders that happened around him. He was paranoid that something would happen to him. Defendant testified he no longer suffered from Hepatitis C, but said he had a tumor in his neck and a spinal injury which limited his physical activity.

Defendant testified that aside from one time, he did not attend any drug or treatment programs, anger management programs, or take any educational classes, because he was afraid of being attacked and had to watch his surroundings. Instead, he studied books and paperwork on these subjects.

Defendant testified that if he was released, he would continue taking his psychiatric medications because they helped him, and he would see "some kind of psychologist" to get them. If he had nowhere to go, he would go to "a chaplain, to some kind of church or somewhere." Defendant was asked if he had anything arranged with family members. Defendant testified his ex-wife and one of his three daughters were present at the hearing. "We ain't got it worked out but my daughters and my ex-wife said that they'll make sure I'm not homeless, yes." When asked if he had arranged to enter a post-release program, defendant said he wrote to eight or nine programs and only two wrote back. Defendant testified he could not be accepted until he was released because "[y]ou have to go out to them." He planned to work any possible job.

After hearing defendant's testimony, the court took the matter under submission.

**The court's ruling**

On July 1, 2014, the trial court orally denied defendant's petition.

5

"I have considered the petition, the prior probation report, all the paperwork that both sides filed. I also considered the testimony at our hearing... [¶] I believe the People have met their burden that the defendant would pose an unreasonable risk to the safety, public safety – let me get the exact terminology. The petitioner would impose a[n] unreasonable risk of danger to the public safety. Therefore, the petition is denied."

Defense counsel asked the court to outline the reasons for its finding. The court replied:

"I think given the overall circumstances, including those – it was a while ago so I don't want to limit myself, but his mental health issues. In listening to him testify, he had – I've got to look at my notes. I was just prepared, honestly, to deny this. I have to look at my notes. It was definitely mental health issues, his refusal to take cellmates.

"There is just a lot of different factors. There is a lot in the mental health area. Back in '08, I believe he slashed an inmate with a razor. I don't have all my notes because it's so thick.

"I appreciate you want to know why, but I just don't have everything right in front of me. [¶] The release plans ... there were really no release plans, even though he would be on post-release community supervision. But that's just kind of a general reason. But I'd be looking at everything involved."

## DISCUSSION

### I. *Proposition 47's Definition of "Unreasonable Risk of Danger to Public Safety" Does Not Apply to Defendant's Petition*

Defendant contends the definition of "unreasonable risk of danger to public safety" included in Proposition 47 (§ 1170.18, subd. (c)), applies to Proposition 36. We disagree.

On November 4, 2014, voters enacted the Safe Neighborhoods and Schools Act (Proposition 47). Under Proposition 47, certain offenses that were previously sentenced as felonies or "wobblers" were reduced to misdemeanors, and individuals serving felony sentences for those offenses were permitted to petition for resentencing. (§ 1170.18, subd. (a).) Assuming the petitioning inmate meets the statutory eligibility requirements, the trial court must resentence the inmate in accordance with Proposition 47 "unless the

6

court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

Unlike Proposition 36, Proposition 47 specifically defines "unreasonable risk of danger to public safety." That definition reads as follows: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).)

Section 667, subdivision (e)(2)(C)(iv) enumerates eight felonies or classes of felonies:

> "The defendant suffered a prior serious and/or violent felony conviction, as defined in subdivision (d) of this section, for any of the following felonies:

> "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

> "(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

> "(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

> "(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

> "(V) Solicitation to commit murder as defined in Section 653f.

> "(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

7

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death." (§ 667, subd. (e).)

On appeal, defendant asserts that this definition of "unreasonable risk of danger to the public safety" also applies to petitions for resentencing under Proposition 36. We disagree.[2]

" ' "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." [Citations.]' [Citation.]" (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.) However, "the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the [voters] did not intend." (*In re Michele D.* (2002) 29 Cal.4th 600, 606.)

Here, it appears clear that the phrase "[a]s used throughout this Code," employed in section 1170.18, subdivision (c), refers to the entire Penal Code, not merely the provisions contained in Proposition 47. (See *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 164–165, 166; see also *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1254–1255; *People v. Vasquez* (1992) 7 Cal.App.4th 763, 766.)

We conclude defendant's proposed interpretation of Proposition 47, and its purported application to Proposition 36, would lead to consequences the voters did not intend when they enacted it. By its provisions, Proposition 47 reduces the sentences of inmates serving felony sentences for specified offenses that are now classified as misdemeanors. Nowhere in the ballot materials on Proposition 47 were voters informed the law would also modify the resentencing provisions of Proposition 36, which concerns recidivist inmates serving sentences for felony offenses that remain classified as felonies.

---

[2] This issue is currently pending review by the California Supreme Court. (See *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825; *People v. Payne* (2014) 232 Cal.App.4th 579, review granted Mar. 25, 2015, S223856.)

The official title and summary, legal analysis, and arguments for and against Proposition 47 are all silent on what effect, if any, Proposition 47 would have on Proposition 36. As we cannot conclude the voters intended an effect of which they were unaware, we decline to conclude the voters intended for Proposition 47's definition of "unreasonable risk of danger to public safety" to apply to Proposition 36 in section 1170.126, subdivision (f).

Further, while we are aware "[i]t is an established rule of statutory construction ... that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings", we are not persuaded that Propositions 36 and 47 are in pari materia. (*People v. Caudillo* (1978) 21 Cal.3d 562, 585, overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6.) Two " '[s]tatutes are considered to be in pari materia when they relate to the same person or thing, to the same class of person[s or] things, or have the same purpose or object.' " (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 124, fn. 4, quoting 2A Sutherland, Statutory Construction (Sands, 4th ed. 1984) § 51.03, p. 467.)

Here, Proposition 47 deals with individuals sentenced as felons for crimes that are now misdemeanors, while Proposition 36 deals with inmates with at least two violent or serious felonies who are currently serving indeterminate life sentences for a third felony conviction. These laws deal with very different levels of punishment, and very different severity of offenses. Even if the statutes are in pari materia, however, canons of statutory instruction are not dispositive, and serve as "mere[] aids to ascertaining probable legislative intent." (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10.)

Given our review of Proposition 47, we must conclude that voters intended the law to apply to the sentencing and resentencing of the misdemeanor offenses enumerated within that law, and not to the previously enacted provisions of Proposition 36. Accordingly, defendant is not entitled to remand that would subject his resentencing

9

under Proposition 36 to the definition of "unreasonable risk of danger to public safety" contained in Proposition 47.**3**

## II. The Trial Court Did Not Abuse its Discretion by Denying Defendant's Petition

Defendant next argues the trial court abused its discretion by finding defendant's release would pose an unreasonable risk of danger to public safety. We again disagree.

As noted above, under Proposition 36, statutorily eligible petitioners "shall be resentenced ... unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising its discretion, "the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Defendant contends the court's statements when it denied the petition for recall, as cited above, demonstrates that the reasons for the denial were so vague as to preclude appellate review. We note, however, that nowhere in Proposition 36 is the trial court required to make express findings in support of its determination that a petitioning inmate poses an unreasonable risk of danger to public safety. Instead, the determination is

---

**3** In a supplemental brief on appeal, defendant argues that if the definition of "unreasonable risk of danger to public safety" found in Proposition 47 applies to Proposition 36, then it must apply both retroactively and prospectively. As we find the definition found in Proposition 47 does not apply to Proposition 36, we need not address defendant's argument regarding retroactive and prospective application.

10

merely left to the discretion of the trial court. (§ 1170.126, subd. (f); cf. § 1385, subd. (a).)

In any event, when reviewing a lower court's discretionary acts, we reverse only if "the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) Here, those circumstances include the record before the trial court at the time of its dangerousness determination, and that record provides us with ample grounds for carrying out appellate review of the trial court's exercise of discretion.

The entirety of the record demonstrates defendant's history of criminality, violence, and substance abuse. Indeed, defendant's criminal record began as a juvenile, and even after defendant's incarceration as a third strike offender, he committed multiple prison rule violations involving the manufacturing of alcohol, possession of narcotics paraphernalia, violence, and refusal to follow staff orders. The record also shows numerous mental health issues, including homicidal ideation, polysubstance abuse, mood problems, paranoia, and depression. These issues are not only reflected in defendant's mental health records, but are also evidenced by the nature of defendant's criminal history and defendant's record of prison rule violations.

At the hearing, defendant sought to minimize his prior convictions, prison violations, and failure to address his mental health and substance abuse problems. He blamed most of this behavior on the alleged retaliation against him for being an informant. However, his testimony was refuted by the records of his prior and current conduct.

While defendant argues his violent prison behavior was a reaction to the danger he faced as a known prison informant, even with the mitigating circumstances created by defendant's cooperation in a prison murder investigation, we cannot state the trial court's decision to deny defendant's petition was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony, supra,* 33 Cal.4th at p. 377.) There was

11

ample evidence to support the trial court's finding that defendant posed an unreasonable risk of danger to public safety and, accordingly, defendant is not entitled to relief.

### III. Defendant was Not Entitled to Have His Dangerousness Proven Beyond a Reasonable Doubt

Next, defendant contends his due process rights were violated because the prosecution only had the burden of proving the factual basis for a finding of unreasonable risk of danger to the public by a preponderance of the evidence. However, an inmate seeking resentencing pursuant to Proposition 36 does not have a Sixth Amendment right to a jury determination, beyond a reasonable doubt, on the question of conduct constituting a disqualifying factor. (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1059–1063; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1038–1040; *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1303.)

We agree with the holdings in these opinions. "[A] court's discretionary decision to decline to modify the sentence in (a petitioner's) favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*People v. Superior Court* (*Kaulick*), *supra*, 215 Cal.App.4th at p. 1303.) Instead, "once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence. [Citation.]" (*Id.* at p. 1305.)

Defendant acknowledges the holding in *Kaulick* but argues it was wrongly decided. He contends he has a constitutional right to have his dangerousness proven beyond a reasonable doubt because a determination of dangerousness deprives defendant of his liberty, and defendant has a greater interest in his liberty than the People have in keeping him incarcerated.[4] (See *In re Marriage of Peters* (1997) 52 Cal.App.4th 1487,

---

[4] Defendant did not object to the standard of proof below. However, as defendant argues in the alternative that his counsel was ineffective for failing to lodge such an

12

1490 ["The burden of proof thus serves to allocate the risk of error between the parties, and varies in proportion to the gravity of the consequences of an erroneous resolution. [Citations.]"].) In making this argument, defendant analogizes his situation to that of involuntarily committed addicts or disabled individuals, who cannot have their involuntary commitments extended without the protections of a jury trial and proof beyond a reasonable doubt. (See *People v. Thomas* (1977) 19 Cal.3d 630, 637; *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 225; *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 178.) We find this argument is without merit.

Unlike the situations cited by defendant, the denial of a petition for recall of sentence does not extend a defendant's term of imprisonment; it merely denies the defendant a downward modification of a validly imposed indeterminate term of life in prison. If the denial of defendant's petition subjected him to an increased sentence, then he would indeed be entitled to the protections of a heightened standard of proof. But since defendant has *already* been subjected to an indeterminate term of life in prison – following a jury trial where he was found guilty of the charges beyond a reasonable doubt and properly sentenced to that term pursuant to the laws in effect at that time – defendant's constitutional rights were not violated by the use of a bench trial and lowered burden of proof in a proceeding concerning a potential downward modification of that properly imposed sentence. (*People v. Superior Court (Kaulick), supra,* 215 Cal.App.4th at pp. 1305–1306.)

Further, defendant's claim that he has a greater interest in his liberty than the People have in keeping him incarcerated is misplaced. While defendant certainly has great interest in his freedom, the People have a similarly serious interest in preventing harm to citizens at the hands of dangerous inmates who would, absent the resentencing

---

objection, and we must reach the merits of this argument to evaluate his ineffective assistance claim, we decline to address the issue of waiver.

13

provisions of Proposition 36, remain incarcerated. As such, a standard of preponderance of the evidence correctly reflects "the gravity of the consequences of an erroneous resolution. [Citation.]" (*In re Marriage of Peters*, *supra*, 52 Cal.App.4th at p. 1490.)

Defendant also contends that, even if proof beyond a reasonable doubt is not constitutionally required, this court should hold that a showing of dangerousness still must be made beyond a reasonable doubt or, in the alternative, by clear and convincing evidence. We decline to make such a holding.

In support of his argument, defendant cites federal cases requiring heightened standards of proof for facts that would dramatically increase a defendant's sentence. (See *United States v. Jordan* (9th Cir. 2001) 256 F.3d 922, 930; *United States v. Pineda-Doval* (9th Cir. 2010) 614 F.3d 1019, 1041.) However, a finding of dangerousness does not *increase* an inmate's sentence; it merely enforces an inmate's preexisting sentence, which was imposed for offenses proved beyond a reasonable doubt at trial. Accordingly, defendant's arguments do not apply to dangerousness determinations, and there is no need for a heightened standard of proof in such determinations. (See *People v. Superior Court (Kaulick)*, *supra*, 215 Cal.App.4th at p. 1305.)

## IV. *Defendant was Not Denied the Effective Assistance of Counsel*

Defendant argues his trial counsel was ineffective for failing to object to the standard of proof applied by the trial court. We disagree.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that a determination more favorable to defendant would have resulted in the absence of counsel's unprofessional errors. (*People v. Kipp* (1998) 18 Cal.4th 349, 366.)

Here, as the trial court applied the correct standard of proof to the determination of defendant's dangerousness, defense counsel's failure to raise a meritless objection to that standard of proof was neither unreasonable nor prejudicial. (*People v. Ochoa* (1998)

14

19 Cal.4th 353, 463 ["Representation does not become deficient for failing to make meritless objections."].)

## DISPOSITION

The order is affirmed.