Filed 6/11/25  P. v. Swanson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FREDDY GUSTAF SWANSON,<br><br>    Defendant and Appellant. | H050624<br>(Monterey County<br> Super. Ct. No. 22CR006397) |

Defendant Freddy Gustaf Swanson was convicted by a jury of, among other offenses, attempted carjacking and was sentenced to a total term of eight years and two months in prison.

On appeal, Swanson argues that there was insufficient evidence to support his conviction for attempted carjacking and that, at sentencing, the trial court erred in awarding presentence custody and conduct credits.  The Attorney General contends that the evidence presented at trial was sufficient to support Swanson's conviction but concedes that Swanson is entitled to additional credits.

Following oral argument, we vacated submission and requested supplemental briefing on whether double jeopardy would bar retrial of the lesser related offense of attempted vehicle theft if we were to conclude that substantial evidence did not support

Swanson's attempted carjacking conviction, directing the parties' attention to *People v. Goolsby* (2016) 244 Cal.App.4th 1220 (*Goolsby II*).[1]

We further asked the parties to brief the following issues: 1) if we conclude double jeopardy bars retrial of the lesser related offense of attempted vehicle theft, do we apply the "accusatory pleading" test or the "elements" test to evaluate whether there are any uncharged lesser included offenses to the charged offense of attempted carjacking; 2) pursuant to the applicable test, are there any lesser included offenses to attempted carjacking, including but not limited to, e.g., attempted grand theft auto (Pen. Code, §§ 664, 487, subd. (d)(1)),[2] attempted grand theft person (§§ 664, 487, subd. (c)), simple assault (§ 240), or simple battery (§ 242); and 3) depending on the resolution of the previous issues, what would be the appropriate disposition in this case?

As we explain below, we conclude that the evidence was not sufficient to support a conviction for attempted carjacking and further conclude that retrial of the lesser related offense of attempted vehicle theft is barred by double jeopardy. We agree with the parties that there are no lesser included offenses to attempted carjacking and that Swanson is entitled to additional credits. Consequently, we will reverse the judgment and remand the matter for the trial court to vacate Swanson's conviction for attempted carjacking and resentence him on his remaining convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural background

On September 26, 2022, the Monterey County District Attorney filed a first amended information charging Swanson with one felony count of attempted carjacking

---

[1] *Goolsby II* considered, as directed by the California Supreme Court in *People v. Goolsby* (2015) 62 Cal.4th 360 (*Goolsby I*), whether retrial on a lesser related offense was barred by double jeopardy principles. (*Goolsby I*, at p. 368.)

[2] Unspecified statutory references are to the Penal Code.

(§§ 664, 215, subd. (a); count 1); one felony count of unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 2); one felony count of receiving a stolen motor vehicle (§ 469d, subd. (a); count 3); two felony counts of evading an officer (Veh. Code, § 2800.2, subd. (a); counts 4, 6); two felony counts of evading an officer against traffic (Veh. Code, § 2800.4; counts 5, 7); and one misdemeanor count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 8).

The information further alleged that, as to count 1, Swanson was on bail at the time of the offense (§ 12022.1, subd. (b)), and as to counts 2 and 3, Swanson had a prior conviction for automobile theft (§ 666.5, subd. (a)).  In addition, the information alleged five aggravating factors: 1) counts 1 through 7 involved great bodily harm or the threat of great bodily harm (Cal. Rules of Court, rule 4.421(a)(1));[3] 2) counts 1 through 7 involved planning, sophistication, and professionalism (rule 4.421(a)(8)); 3) counts 1 through 7 involved an attempted or actual taking of great monetary value (rule 4.421(a)(9)); 4) in counts 1, 4, 5, and 7, Swanson engaged in violent conduct (rule 4.421(b)(1)); and 5) as to counts 1 through 7, Swanson had prior convictions or sustained juvenile delinquency petitions that are numerous and of increasing seriousness (rule 4.421(b)(2)).

On September 28, 2022, a jury convicted Swanson on all counts with the exception of counts 6 and 7 (felony evading an officer and felony evading an officer against traffic).  Following a court trial,[4] the court found both enhancements true along with certain factors in aggravation.

On October 26, 2022, Swanson filed a motion for a new trial on the ground that there was no substantial evidence to support a conviction for attempted carjacking (§§ 664, 215, subd. (a); count 1).

---

[3] Unspecified rule references are to the California Rules of Court.

[4] Swanson waived his right to a jury trial on the enhancements and factors in aggravation.

At the November 4, 2022 sentencing hearing, the trial court denied Swanson's motion for a new trial. The trial court then sentenced Swanson to a total term of eight years and two months in state prison, consisting of an upper term of four years, six months on count 1, plus two years consecutive for the on-bail enhancement; a consecutive one year term (one-third the middle term of three years) on count 2; a consecutive eight month term (one-third the middle term of two years) on count 4; and a concurrent term of 365 days on count 8. The court stayed the sentences on counts 3 and 5 pursuant to section 654.

The court imposed a restitution fund fine of $1,200 (§ 1202.4, subd. (b)(2)) and an additional parole revocation fund fine of $1,200, suspended pending successful completion of parole (§ 1202.45). The court also imposed a court operations assessment of $240 (§ 1465.8, subd. (a)(1)), a court facilities assessment of $180 (Gov. Code, § 70373), and a total of $12 in emergency medical air transportation fees (Gov. Code, § 76000.10). Finally, the court awarded 200 days of custody credit plus 30 days of conduct credits "calculated at 15%" for a total of 230 days.

Swanson timely appealed.

**B. Factual background**

### 1. January 19, 2021 incident[5]

On January 19, 2021, the victim reported that his vehicle had been stolen. Later that day, a Monterey police officer responded to a report of two vehicles driving recklessly. The officer tried to pull one of the vehicles over, and the driver turned and

---

[5] The facts relating to this incident, which formed the basis for the charges of unlawful driving or taking of a vehicle (Veh. Code, § 10851 subd. (a); count 2); receiving a stolen motor vehicle (§ 469d, subd. (a); count 3); evading an officer (Veh. Code, § 2800.2, subd. (a); count 4); evading an officer against traffic (Veh. Code, § 2800.4; count 5); and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 8), are not relevant to the issues presented on appeal. Therefore, we present only a brief summary of what occurred.

looked at the officer before accelerating away. Given the traffic congestion and the driver's recklessness, the officer ended his pursuit. The officer later learned the vehicle he was pursuing had been reported stolen earlier that day. The officer identified Swanson in court as the driver.

The evening of January 19, 2021, a Seaside police officer was following a vehicle that he suspected was the one the victim had reported stolen that morning. The officer tried to pull the vehicle over, but it immediately turned into the opposite lane and drove off at a high rate of speed.

Swanson was arrested on the evening of January 20, 2021. Swanson had a small bag of methamphetamine on his person. The stolen vehicle was recovered in a separate location on January 21, 2021.

### *2. April 29, 2021 incident*

On April 29, 2021, John Doe[6] woke up at his usual time of around 5:00 a.m. and began making his breakfast smoothie. Doe realized that he had left the cup he used for that beverage in his truck so he went outside to retrieve it. As Doe stepped out on his porch, he saw a man sitting on the curb across the street. It was very dim, with the only light coming from the apartment complex across the street.

Doe walked down the two flights of stairs to where his truck was parked and as Doe reached the back of his truck, the man sitting on the curb got up and walked away down the street. Doe approached the driver's side door of his truck and noticed that it was slightly ajar. The interior light was not on, and Doe thought that the man he had seen previously had been in his truck.

As soon as Doe opened the door to his truck, a man (later identified as Swanson) jumped out. Swanson shoved Doe out of his way, back toward the rear of the truck, and

---

[6] The victim was identified as "John Doe" at trial.

5

tried to flee "immediately." As "he was going past [Doe]", Doe grabbed Swanson's sweatshirt, swung him around, and Doe put him in a choke hold.

Doe and Swanson struggled in the parking area, with Swanson facing away from Doe in a "rear naked choke." Swanson swung his arm behind him trying to strike Doe and hit him at least once on the back right side of his head just behind his ear.[7] Doe did not let go and Swanson knelt on the ground, saying he could not breathe.

Doe loosened his choke hold and Swanson slowly stood up, with Doe still holding him. Swanson started to twist around to face Doe and, fearing that Swanson had another weapon, Doe shoved him away. Swanson ran off down the street.

Doe was treated at the emergency room for a gash on his head, which required seven staples to close. The physicians said that the wound caused nerve damage, and at the time of trial, Doe was experiencing numbness with an occasional jolt of pain from the injury. Doe also had some abrasions on his arm, elbow, and knees caused by the pavement as he grappled with Swanson.

After the incident, Doe looked inside his truck and saw that the ignition cylinder had been removed and left on the floor. Based on his experience as an auto mechanic, Doe knew that, once the ignition cylinder was removed, a thief would only need to insert a screwdriver into the ignition switch and turn it. Doe thought that Swanson was "probably about 30 seconds away from stealing my truck." Doe also saw that the glove box was opened, and the interior dome light had been removed.

When police examined the truck, they collected DNA evidence from the interior and from a "shaved key" they found on the floorboard which had a high probability of coming from Swanson.

---

[7] Doe testified the object that struck him was sharp and "most likely … a screwdriver."

## II. DISCUSSION

### A. *Sufficiency of the evidence*

Swanson argues the evidence presented at trial was not sufficient to support his conviction for attempted carjacking, specifically in that there was not "substantial evidence that he intended to take the truck from … Doe's immediate presence much less that he intended to do so through force or fear."

The Attorney General argues that there was substantial evidence Swanson formed the requisite specific intent for attempted carjacking when Doe arrived at the truck and interrupted his efforts.

For the reasons explained below, we conclude that the evidence was insufficient to support a conviction for attempted carjacking.

#### 1. *Additional background*

In count 1, the information accused Swanson of attempted carjacking in violation of sections 215, subdivision (a) and 664, when he "[attempted to] unlawfully take a motor vehicle in the possession of JOHN DOE from his or her person and immediate presence and from the person …, against the will and with the intent to permanently and temporarily deprive the person in possession of the motor vehicle of the possession and accomplished by means of force and fear."

The trial court instructed the jury on count 1 as follows: "A person who attempts to commit carjacking is guilty of attempted carjacking even if, after taking a direct step towards committing the crime, he or she abandoned further efforts to complete the crime or if his or her attempt failed or was interrupted by someone or something beyond his or her control.  [¶]  On the other hand, if a person freely and voluntarily abandons his or her carjacking, then that person is not guilty of attempt[ed] carjacking.  [¶] … [¶]  To prove that the defendant is guilty of carjacking, the People must prove that:  [¶]  One, the defendant took a motor vehicle;  [¶]  Two, the vehicle was taken from the immediate

7

presence of a person who possessed the vehicle or was its passenger; [¶] Three, the vehicle was taken against that person's will; [¶] Four, the defendant used force or fear to take the vehicle or to prevent that person from resisting; [¶] And five, when the defendant used force or fear to take the vehicle, he intended to deprive the other person of possession of the vehicle either temporarily or permanently. [¶] The defendant's intent to take the vehicle must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit carjacking. [¶] … [¶] Fear, as used here, means fear of injury to the person himself or injury to the person's family or property. [¶] A vehicle is within a person's immediate presence if it is sufficiently within his or her control so that he or she could keep possession of it if not prevented by force or fear. [¶] A carjacking occurs when a person uses force or fear to take the vehicle or to prevent that person from resisting either before, while, or after the defendant initially takes possession of the vehicle. [¶] Mere theft becomes carjacking if the perpetrator, having gained possession of the property without the use of force or fear, resorts to force or fear while driving off with the vehicle."

In final argument, the prosecutor asserted that the fourth element of the offense was established "[a]s soon as [Swanson] put his hands on [] Doe, that's when that theft turned into the attempted carjacking because he used the force or fear on [] Doe. And then he was unable to get away with the vehicle. He fled. That's when your attempted carjacking occurred. [¶] Attempted -- the defendant took a direct but ineffective step towards committing a carjacking and he intended to commit it. [¶] When the defendant chose to use force, push [Doe], continue that scuffle, put that laceration into … Doe's head, that's when the carjacking occurred. [¶] The defendant intended to do that. He intended to use the force. He intended to steal the car. And had [] Doe not come out, it wouldn't have been … interrupted."

8

Defense counsel did not specifically address count 1 in his closing argument but instead urged the jury to acquit Swanson because there was no direct identification of him by Doe.[8]

The jury returned a general verdict on count 1, finding Swanson "[g]uilty of the crime of ATTEMPTED CARJACKING, in violation of California Penal Code [sections] 664/215(a)."

### 2. Standard of review and applicable legal principles

In considering a claim of insufficient evidence, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson*).) "In applying this test, we … presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence.' " (*Ibid.*) 'We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*Ibid.*) "Simply put, if the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also

---

[8] Doe testified that he told police officers that the man who had tried to take his truck had a tattoo of a "flower" or "rose" covering the back of his right hand. On cross-examination, Doe said that, just prior to him taking the witness stand, the district attorney showed him photographs of the backs of Swanson's hands. When shown the photo of the back of Swanson's right hand, Doe was "really surprised" because there "was no flower tattoo" or any other kind of tattoo covering that hand.

9

reasonably be reconciled with a contrary finding." (*People v. Farnam* (2002) 28 Cal.4th 107, 143.) "However, '[a] reasonable inference … "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] ... A finding of fact must be an inference drawn from evidence rather than … a mere speculation as to probabilities without evidence." ' " (*People v. Davis* (2013) 57 Cal.4th 353, 360 (*Davis*).)

Section 215, subdivision (a) states: " 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." Courts have repeatedly observed that the carjacking statute is modeled on the robbery statute. (*In re Travis W.* (2003) 107 Cal.App.4th 368, 373–377, and cases cited therein.) Although distinct crimes with some notable differences, carjacking and robbery are closely related and cases regarding robbery are instructive regarding carjacking because the elements and statutory language of the two offenses are similar. (*People v. Lopez* (2003) 31 Cal.4th 1051, 1059–1061 (*Lopez*).)

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Thus, attempted carjacking requires the specific intent to take a vehicle not one's own; from the immediate presence of a person possessing the vehicle; against that person's will; using force or fear to accomplish the taking; intending to deprive that person of the vehicle either temporarily or permanently. (§ 215; CALCRIM No. 1650.) The accompanying act required is "a direct but ineffective step [¶] ... [¶] that goes beyond planning or preparation and shows that a person is putting his or her plan into action," and "indicates a definite and unambiguous intent to commit [carjacking]." (CALCRIM

No. 460.)  A person is guilty of attempted carjacking "even if, after taking a direct step towards committing the crime, ... his or her attempt failed or was interrupted by someone or something beyond his or her control."  (*Ibid.*)

### 3. Analysis

The evidence presented below was insufficient to establish that Swanson intended to use force or fear to take Doe's vehicle.  Once Doe opened the door to his car, there was no evidence that Swanson intended to do anything except flee and any force he employed thereafter was to escape from Doe's grasp rather than to take Doe's vehicle.

We briefly recount the salient evidence.  At around 5:00 a.m., Doe went to his truck to retrieve a cup.  It was still dark and Doe did not see that anyone was inside his vehicle though he saw someone sitting on the curb across the street.  When Doe reached the driver's side door, he noticed it was ajar but thought that the person across the street had been in his vehicle.  The interior light was not on, because Swanson had removed the dome light, presumably to minimize being detected.

As soon as Doe opened the door, Swanson jumped out, put both hands on Doe's chest and shoved him "out of the way."[9]  In Doe's words, Swanson tried to "flee immediately" but Doe grabbed Swanson's sweatshirt as he attempted to escape.  It was only after Doe had Swanson in a choke hold that Swanson swung his arm at Doe, eventually striking him once in the head with a sharp object.

As they struggled, Doe testified that Swanson never attempted to move toward or re-enter the truck, saying "It never got back into the truck.  It was all outside.  It actually

---

[9] Doe repeatedly used the phrase "out of the way" or its equivalent to describe how Swanson shoved him, e.g., "somebody jumped out of my truck and shoved me out of the way[,]" "[h]e pushed me out of the way[,]" "they pushed me out of the way, both hands, right on my chest, shoved me out of the way[,]" "I was pushed out of their path towards -- towards the rear of the truck."

11

moved towards my driveway." When Doe loosened his grip on Swanson and pushed him away, Swanson immediately ran away.

None of this evidence supports the conclusion that Swanson intended to take the truck from Doe's *immediate presence* at any time. Rather, the evidence shows only that Swanson made every effort to avoid detection (entering the truck at 5:00 a.m. before sunrise and removing the dome light so as to prevent anyone seeing him in the vehicle), as well as that, once he *was* detected, Swanson's singular intention was to escape. While it is clear that Swanson initially intended to steal Doe's vehicle, under " ' "no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict[]" (*Zamudio*, *supra*, 43 Cal.4th at p. 357) that Swanson was guilty of attempted carjacking.

As discussed above, "the Legislature modeled the carjacking statute on the robbery statute," and therefore courts have relied on robbery cases to interpret the carjacking statute. (*Lopez, supra*, 31 Cal.4th at p. 1059.) The taking of the vehicle must be from the "person or immediate presence" of the person. (§ 215, subd. (a).) " 'A vehicle is within a person's immediate presence for purposes of carjacking if it is sufficiently within his control so that he could retain possession of it if not prevented by force or fear.' " (*People v. Johnson* (2015) 60 Cal.4th 966, 989.) Appellate courts have taken an expansive view of the "immediate presence" element of carjacking and it is not a requirement that the victim "be physically present in the vehicle when the confrontation [with the prospective carjacker] occurs." (*People v. Medina* (1995) 39 Cal.App.4th 643, 650.)

Robbery and carjacking are both continuing offenses that are proven if force or fear is used to prevent retaking of property initially obtained without either. Robbery "begins from the time of the original taking until the robber reaches a place of relative safety," and "[i]t is sufficient ... that [defendant] used force to prevent the ... retaking [of] the property and to facilitate his escape." (*People v. Estes* (1983) 147 Cal.App.3d 23,

12

28.) A like rule applies to carjacking. "[M]ere vehicle theft becomes carjacking if the perpetrator, having gained possession of the motor vehicle without use of force or fear, resorts to force or fear while driving off with the vehicle." (*People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1131.)

In this case, however, the evidence presented was that Swanson's use of force was intended to effectuate his escape (on foot), not to complete the theft of Doe's truck. For example, when Doe went to open the door to the vehicle, Swanson pushed Doe "out of the way" and tried to run *past* him, away from the truck's cab. In order to establish that Swanson's use of force was intended to allow him to resume his efforts to steal the vehicle, there must be credible evidence of this specific intent. Such evidence might include testimony that Swanson took steps to prevent Doe from retaking the truck or that Swanson attempted to reenter the vehicle. However, Doe offered no testimony that Swanson made even the slightest effort to do either of those things. In fact, Doe's testimony was consistent and clear that the only reason Swanson remained anywhere *near* the truck during their encounter was because Doe grabbed Swanson's sweatshirt and placed him in a chokehold, preventing his escape. It was at that point that Swanson swung his arm at Doe, striking him once in the head with a sharp object. When Swanson said he could not breathe, Doe relaxed his grip a bit and Swanson was able to stand up, with Doe still holding him. Swanson began to slowly twist his body around to face Doe and Doe, fearing that Swanson was armed and would "jab at [his] face[,]" let go and "shoved [Swanson] away." Once Doe released his grip, Swanson immediately ran off.

The Attorney General argues we should affirm the conviction because the "jury could have inferred that if [Swanson] saw Doe coming and if [Swanson] had wanted to abandon his efforts to steal the truck, he would have fled before Doe made it to the truck." We are not persuaded. There was no evidence that Swanson was aware of Doe's approach or that Doe was associated with the vehicle until Doe reached the door of the

13

truck.  Consequently, any inference that Swanson saw Doe approaching and chose to assault Doe instead of fleeing amounts to nothing more than " ' "a mere speculation as to probabilities without evidence." ' "  (*Davis*, *supra*, 57 Cal.4th at p. 360.)

Having reviewed the record in the light most favorable to the judgment below (*Johnson*, *supra*, 26 Cal.3d at p. 578), as we must, we conclude that there is not substantial evidence which is reasonable, credible, and of solid value establishing that Swanson formed a specific intent to commit the crime of carjacking, and that he took a direct but ineffectual act toward its commission.

### B. Double jeopardy

#### 1. Applicable legal principles

Both the United States Constitution and the California Constitution prohibit a defendant from being "twice put in jeopardy" for the same offense.  (U.S. Const., 5th & 14th Amends.; see also Cal. Const., art. I, § 15.)  " 'At its core, the double jeopardy clause "protect[s] an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." [Citation.]  The policy underlying the double jeopardy protection "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual … thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity." [Citation.]' [Citation.]"  (*People v. Wilson* (2023) 14 Cal.5th 839, 852 (*Wilson*).)  In applying double jeopardy protections, California courts take guidance from "those decisions interpreting the double jeopardy clauses of both the United States and California Constitutions."  (*People v. Hatch* (2000) 22 Cal.4th 260, 271 (*Hatch*).)

"Whether double jeopardy principles bar a second prosecution depends on how the first trial ended."  (*Wilson*, *supra*, 14 Cal.5th at p. 852.)  Where the defendant is acquitted on a charge, double jeopardy " 'unequivocally prohibits a second trial … [citation]' " on

that same charge. (*Ibid*.) Double jeopardy will not necessarily preclude retrial where a defendant succeeds in having a conviction overturned on appeal or through collateral attack " 'because of some error in the proceedings leading to conviction.' [Citation.]" (*Id*. at p. 853.) Nevertheless, "[a] settled exception to this rule permitting retrial after a successful appeal occurs when a conviction has been reversed due to insufficiency of the evidence. [Citations.]" (*Ibid*.) A reversal based on legal insufficiency of the evidence has the same double jeopardy effect as an acquittal "because it means that no rational factfinder could have voted to convict the defendant." (*Tibbs v. Florida* (1982) 457 U.S. 31, 41.)

## *2. Retrial of lesser related offense*

We next address whether double jeopardy bars retrial on the lesser related offense of attempted vehicle theft given that, in this case, the evidence was not sufficient to support a conviction for attempted carjacking but could have been sufficient to support a conviction for that lesser related offense. Before trial, Swanson requested that the jury be instructed on attempted vehicle theft as a lesser related offense in count 1 and the prosecution agreed. At the conclusion of evidence, the trial court instructed the jury on the lesser related offense of attempted car theft.[10] However, it also instructed the jurors that it should only reach a verdict on the lesser related offense if it first concluded that Swanson was not guilty of the greater offense of attempted carjacking.[11] Having

---

[10] Specifically, the court instructed the jury: "To prove that the defendant is guilty of attempted unlawful taking of a vehicle, the People must prove that: [¶] One, the defendant took a direct but ineffective step toward committing an unlawful taking of a vehicle; [¶] And two, the defendant intended to commit the unlawful taking of a vehicle."

[11] In her summation, the prosecutor also informed the jurors that they could only consider the lesser related offense if they "all agree that it has not been proved beyond a reasonable doubt that the defendant committed [] attempted carjacking."

15

concluded that Swanson was guilty of attempted carjacking, the jury did not return a verdict on the lesser related offense of attempted vehicle theft.

In *Goolsby I*, *supra*, 62 Cal.4th 360, the California Supreme Court held that retrial on a lesser related offense does not violate section 654 even where the defendant's conviction on the greater offense was reversed for insufficient evidence. (*Goolsby I*, *supra*, at pp. 363.) In that case, although the lesser related offense was not charged in the information, the jury had been instructed on it and the defendant raised no objection to that instruction. (*Ibid*.) However, believing the lesser *related* offense was a lesser *included* offense, the trial court erroneously "instructed the jury to reach a verdict on it only if it acquitted defendant of the charged [greater offense]." (*Ibid*.) The jury found the defendant guilty of the greater offense and, as instructed, did not render a verdict on the lesser offense. (*Ibid*.) Because the jury did not reach a verdict on the lesser related offense, that charge remained " 'unresolved[.]' " (*Id*. at p. 367.) The Supreme Court remanded the case to the appellate court for consideration of whether a retrial on the lesser related offense was barred by double jeopardy principles. (*Id*. at p. 368.)

On remand, the court of appeal concluded that retrial of the lesser related offense was barred by double jeopardy. (*Goolsby II*, *supra*, 244 Cal.App.4th at p. 1224.) The court determined that this was so because the trial court discharged the jury without requiring it to return a verdict on the lesser related offense. (*Id*. at p. 1226.) In so holding, the court rejected the People's argument that double jeopardy does not prohibit retrial where reversal is due to an error of law, such as where the "jury's failure to return a verdict on the lesser related offense was due to misinstruction." (*Ibid*.) The court noted that the reversal of the verdict on the greater offense was based on the insufficiency of the evidence, not an error of law. (*Ibid*.) Discharging the jury without requiring that it return a verdict on the lesser related offense, " 'is tantamount to an acquittal and prevents a retrial, unless the defendant consented to the discharge or legal necessity required it.

16

[Citations.]' (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 516 [183 Cal. Rptr. 647, 646 P.2d 809], fn. omitted.)" (*Goolsby II*, *supra*, at p. 1225.)

In his supplemental brief, Swanson argues that, because the jury was instructed on the lesser related offense of attempted vehicle theft but was discharged without rendering a verdict on that offense, double jeopardy bars any retrial on that charge. The Attorney General contends that double jeopardy does not bar a retrial because, at the close of evidence, the trial court instructed[12] the jury that it could "accept a verdict of guilty of a lesser related crime only if you have found the defendant not guilty of the corresponding greater crime." As a result, when the jury failed to return a verdict on the lesser related offense of attempted vehicle theft, it was due to this instruction.[13] According to the Attorney General, Swanson consented to the jury's discharge and "waived any plea of first in jeopardy" by filing a motion for a new trial, citing *People v. Eroshevich* (2014) 60 Cal.4th 583, 590 (*Eroshevich*).

We conclude Swanson has the better argument. We first note that the Attorney General's citation to *Eroshevich* is misplaced. *Eroshevich* does state that, as a general rule, "[a] defendant who files a motion for a new trial, like a defendant who moves for a mistrial, waives state and federal double jeopardy protections. [Citations.]" (*Eroshevich*, *supra*, 60 Cal.4th at p. 590.) Here, however, Swanson did not move for retrial on the lesser related offense (and it is not clear how he could have done so, given that no verdict

_____

[12] The Attorney General points out that while neither party requested this instruction (CALCRIM 3517), neither party objected when the trial court proposed that it be given.

[13] The Attorney General also makes the following concession: "[T]here was no legal necessity to discharge the jury. The record does not demonstrate the jury deadlocked on any of the issues presented to it nor was there any reason to declare a mistrial. The jury appears to have duly discharged its duties, having found appellant guilty of the greater offense and been instructed not to issue a verdict on any lesser offenses."

17

was entered on that charge), so *Eroshevich* is not applicable. Consequently, Swanson's (unsuccessful) motion for a new trial on his attempted carjacking conviction did not waive his right to assert double jeopardy as to the lesser related offense of attempted vehicle theft.

*Goolsby II*, on the other hand, is on point. In the present case, the jury was, at Swanson's request and without objection from the prosecution, instructed on attempted vehicle theft as a lesser related offense to attempted carjacking. In accordance with the trial court's instruction, the jury did not return a verdict on that offense since it found Swanson guilty of the greater offense. Although Swanson did not object to the jury being discharged before reaching a verdict on the lesser related offense of attempted auto theft, this does not equate to consent. (*Goolsby II*, *supra*, 244 Cal.App.4th at pp. 1226–1227.) Once the jury was discharged without having reached a verdict on the lesser related offense, it was as if Swanson was acquitted on that charge and double jeopardy precludes retrial.

### C. Lesser included offenses

Pursuant to sections 1181, subdivision 6, and 1260,[14] where " 'insufficient evidence supports the conviction for a greater offense [an appellate court] may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser

---

[14] Section 1181, subdivision 6 provides that a trial court may grant a new trial "[w]hen the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed … ."

Section 1260 provides that "[t]he court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed … and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

included offense.' [Citations.]" (*People v. Bailey* (2012) 54 Cal.4th 740, 748, fn. omitted, (*Bailey*).) To evaluate whether an uncharged offense is necessarily included within a charged offense, courts employ two tests: "the 'elements' test and the 'accusatory pleading' test." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former. [Citation.]" (*Id.* at pp. 1227–1228.)

In response to our question regarding which of these two tests we should apply to evaluate whether there are any lesser included offenses to attempted carjacking, the parties agree that we should apply the elements test because the first amended information incorporated the statutory definition of attempted carjacking without referring to particular facts. (*People v. Robinson* (2016) 63 Cal.4th 200, 207.) We agree that the elements test applies.

We now examine whether there are, under the elements test, any lesser included offenses to attempted carjacking. In response to our request for supplemental briefing, the parties examined whether attempted grand theft auto (§§ 664, 487, subd. (d)(1)),[15]

---

[15] Section 487, subdivision (d)(1) provides: "Grand theft is theft committed in any of the following cases: [¶] … [¶] (d) When the property taken is any of the following: (1) An automobile." "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.)

attempted grand theft person (§§ 664, 487, subd. (c)),[16] simple assault (§ 240),[17] or simple battery (§ 242)[18] would be lesser included offenses to attempted carjacking. The parties agree that none of these crimes qualify under the elements test as lesser included offenses and we concur.

As discussed in *People v. Marquez* (2007) 152 Cal.App.4th 1064 (*Marquez*), attempted grand theft auto is not a lesser included offense of attempted carjacking because attempted grand theft auto requires an intent to permanently deprive the victim of possession, whereas attempted carjacking can be committed with the intent to either temporarily or permanently deprive the victim of possession. (*Id*. at p. 1068.) Similarly, attempted grand theft person does not satisfy the elements test because, like attempted grand theft auto, the perpetrator must have the intent to *permanently* deprive the victim of possession and attempted carjacking may be committed with the intent to temporarily deprive the victim of possession.

Simple assault also does not meet the elements test as a lesser included offense of attempted carjacking. "[A]ssault requires actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another." (*People v. Williams* (2001) 26 Cal.4th 779, 782.) Attempted carjacking,

---

[16] Section 487, subdivision (c) provides: "Grand theft is theft committed in any of the following cases: [¶] … [¶] (c) When the property is taken from the person of another."

[17] Section 240 provides; "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

[18] Section 242 provides: "A battery is any willful and unlawful use of force or violence upon the person of another."

20

however, does not require any injury to another person and may be accomplished by fear alone.  (§§ 215, 240.)

Similarly, battery is not a lesser included offense of attempted carjacking because battery requires the willful application "of force or violence upon the person of another." (§§ 215, 242.)  " 'Any harmful or offensive touching constitutes an unlawful use of force or violence' under [section 242].  [Citations.]" (*People v. Shockley* (2013) 58 Cal.4th 400, 404.)  Attempted carjacking, on the other hand, does not require the application of force but may be accomplished by fear alone.  (§ 215; *Marquez, supra,* 152 Cal.App.4th at pp. 1067–1068.)

As neither party has identified any lesser included offense to attempted carjacking and our research has disclosed none, there is no basis for this court to modify the judgment " 'to reflect a conviction for a lesser included offense.'  [Citations.]" (*Bailey*, *supra*, 54 Cal.4th at p. 748, fn. omitted.)  Accordingly, we will remand the matter for the trial court to strike Swanson's conviction for attempted carjacking and to resentence him on the remaining convictions.

### D. Credits

Swanson argues and the Attorney General concedes that the trial court erred when it calculated his presentence custody credits subject to the 15 percent limitation in section 2933.1.  We agree with the parties.  Attempted carjacking is not a designated offense under section 2933.1, subdivision (a) and thus Swanson was not subject to the 15 percent credit limitation.

As we are reversing the judgment and remanding the matter for resentencing, the trial court can recalculate the number of credits due.

### III.   DISPOSITION

The judgment is reversed and the matter is remanded.  On remand, the trial court shall strike Swanson's conviction on count 1 due to insufficiency of the evidence and

21

resentence him on counts 2, 3, 4, 5, and 8.  At resentencing, the trial court shall recalculate Swanson's credits.

_____
WILSON, J.

WE CONCUR:


_____
LIE, Acting P. J.




_____
BROMBERG, J.




*People v. Swanson*
H050624